[Civ. No. 1918. Fourth Appellate District.—September 27, 1935.]

T. ABE, Respondent, v. FISH AND GAME COMMISSION OF THE STATE OF CALIFORNIA et al., Appellants.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Appellants.

Harrison G. Sloane and Fred A. Steiner for Respondent.

BARNARD, P. J.—This is an action for an injunction to restrain the defendants from molesting the plaintiff and the members of the crew of his fishing boat and from preferring against them any charges under the provisions of section 990 of the Fish and Game Code. (Stats. 1933, chap. 73, p. 479.)

The complaint alleged that the plaintiff is the owner of a certain fishing boat "Osprey", which for two years he had used in taking fish from "ocean waters outside of the State of California and beyond the jurisdiction thereof and in bringing the same ashore within the State of California for the purpose of selling the same in a fresh state"; that the plaintiff is the holder of a commercial fishing license and is willing to comply with all laws and regulations in so far as he can; that the plaintiff required and had the services of a crew of six persons but that none of said crew had resided continuously within the United States for a period of one year last past and none was eligible to procure a commercial fishing license under the code section above referred to; that the defendants had threatened to and would, unless restrained, institute proceedings charging the plaintiff and his crew with violating section 990 of said code; and that said code section is in violation of the Constitution of the United States and the state Constitution of California. A demurrer was over-ruled and, the defendants declining to answer, judgment was entered in favor of the plaintiff, from which judgment the defendants have appealed.

The main and, we think, the decisive question here presented, is whether this section of the Fish and Game Code violates the equal protection clause of the fourteenth amendment to the federal Constitution in requiring a license of every person who assists in the bringing of fish caught on the high seas into this state, for the purpose of selling the same in a fresh state, and in limiting the issuance of such license to persons who have continuously resided in the United States for a period of one year.

The appellants frankly concede that this statute is discriminatory but argue that it is such a discrimination as is permissible, relying on the case of *Lubetich* v. *Pollock*, 6 Fed. (2d) 237. In that case the court considered a statute of the state of Washington making it unlawful for any person to take fish from any waters within the jurisdiction of the state unless such person was a citizen of the United States or had declared his intention to become such, and unless he possessed certain residence requirements. The statute was upheld on the ground that all fish within the waters of the state belonged to the people of the state in common, that the power to dispose of such fish was incidental to the ownership of the property, and that in dealing with its own property and permitting it to be converted into private ownership the state was authorized to prescribe the terms and conditions upon which this might be done. While the right of the state to thus deal with its own property was upheld, the court there said: "Obviously it is a denial of the equal protection of the laws when a law-making body, regulating, not its own property, but private business, undertakes to deny to aliens the right to engage in lawful trade or labor."

We are not here concerned with the right to prohibit any person from bringing fish or game, no matter where taken, into a state or into a particular district during a closed season in which such fish or game may not lawfully be taken within such state or district. (See *New York ex rel. Silz* v. *Hesterberg*, 211 U. S. 31 [29 Sup. Ct. 10, 53 L. Ed. 75]; *Johnson* v. *Gentry*, 220 Cal. 231 [30 Pac. (2d) 400, 92 A. L. R. 1264].)

The case of *Booth* v. *Lloyd*, 33 Fed. 593, involved a statute enacted by the state of Maryland providing that no person should employ any vessel to carry, buy or sell oysters on the waters of Chesapeake Bay without first obtaining a license and that no one could obtain such a license unless he had been a resident of the state for twelve months. Certain of the plaintiffs who were citizens of the state of Illinois had applied for such a license, which was refused to them. A boat upon which they were transporting oysters was seized and in its opinion, in the action which followed, the court said:

"The law invoked as the justification of the seizure is, in our opinion, unconstitutional, because it denies to citizens of other states privileges and immunities granted to citizens of

Maryland, in a matter to which that clause of the federal Constitution is applicable. A state cannot discriminate, by tax or license, between the goods or merchandise of home manufacture as against those produced in other states. (*Welton* v. *Missouri*, 91 U. S. 275 [23 L. Ed. 347]; *Tiernan* v. *Rinker*, 102 U. S. 123 [26 L. Ed. 103]; *Webber* v. *Virginia*, 103 U. S. 344, 345 [26 L. Ed. 565].) Nor can a state impose a tax or license upon a nonresident trader different from that imposed upon a citizen or resident trader. (*Ward* v. *Maryland*, 12 Wall. 418 [20 L. Ed. 449].)"

It has been held in this state that a city ordinance fixing a higher license for nonresidents than that required of residents engaged in the same line of business is discriminating and not founded upon any reasonable ground of classification. (*In re Hines*, 33 Cal. App. 45 [164 Pac. 339]; *In re Hart*, 36 Cal. App. 627 [172 Pac. 610].)

The general rules with respect to the equal protection clause of the federal Constitution are discussed in the case of *In re Kotta*, 187 Cal. 27 [200 Pac. 957], in which a statute imposing a poll tax on aliens was held to be invalid. In that case, the court said:

"The meaning of 'the equal protection of the laws' thus guaranteed by the federal Constitution to every person within the jurisdiction of a state is not left in doubt by the decisions in so far as such an act as the one here involved is concerned. In *Yick Wo* v. *Hopkins, supra* [118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220], it is said that 'the equal protection of the laws is a pledge to the protection of equal laws'. This was approvingly quoted in *Truax* v. *Raich, supra* [239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, Ann. Cas. 1917B, 283, L. R. A. 1916D, 545]. In *Barbier* v. *Connolly*, 113 U. S. 27, 31 [28 L. Ed. 923, 5 Sup. Ct. 357, 359, see, also, Rose's U. S. Notes], the Supreme Court of the United States declared that it was undoubtedly intended thereby 'that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no im-

pediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; *that no greater burdens should be laid upon one than are laid upon others in the same calling and condition,'* etc. (Italics ours.) As is shown by the opinion in *Yick Wo* v. *Hopkins, supra,* the legislation enacted by Congress for the enforcement·of the amendment, popularly known as the civil rights statutes, declared that 'all persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens *and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.'* (Italics ours.) What is said in *Barbier* v. *Connolly, supra,* and the federal statute just quoted sufficiently shows the subject-matter as to which the alien inhabitant is given by the Constitution 'a pledge of the protection of equal laws,' laws free from discrimination based solely on his alien character. Stated very generally, the requirement is for equal protection and security for all, citizens and aliens alike, under like circumstances, in the enjoyment of their personal and civil rights, and in the imposition of burdens, such as penalties, taxes, etc. As is stated in the opinion in *Truax* v. *Raich, supra,* the constitutional guaranty, in so far as an alien is concerned, has no application to laws of a state relating to such matters as the .regulation or distribution of the public domain, or of the common property or resources of the people of the state, or. it is suggested, laws relating to the devolution of the real property therein. (See *Truax* v. *Raich,* 239 U. S. 33, 39, 40 [Ann. Cas. 1917B, 283, L. R. A. 1916D, 545, 60 L. Ed. 131, 36 Sup. Ct. 7].) But that it does guarantee the alien 'equal laws' in the matter of the imposition of such burdens on him and his property as taxes seems clear. No question of discriminatory taxation laws was directly involved in the decisions of the Supreme Court that we have cited, but the rule of these decisions is clearly applicable to such a case. In *The Railroad Tax Cases,* 13 Fed. 722, Justice Field, in his opinion in the Circuit Court, said: 'The fourteenth amendment to the Constitution, in declaring that no state shall deny to any person within its jurisdiction the equal protec-

tion of the laws, imposes a limitation upon the exercise of all the powers of the state which can touch the individual or his property, including among them that of taxation. Whatever the state may do, it cannot deprive anyone within its jurisdiction of the equal protection of the laws. . . . Unequal exactions in every form, or under any pretense, are absolutely forbidden; and of course unequal taxation, for it is in that form that oppressive burdens are usually laid.' (See, also, *Fraser* v. *McConway etc. Co.*, 82 Fed. 257; *Juniata Limestone Co.* v. *Fagley*, 187 Pa. St. 193 [67 Am. St. Rep. 579, 42 L. R. A. 442, 40 Atl. 977].) This is so clearly true, in view of the general principles declared by the United States Supreme Court in the cases we have cited, as not to require discussion. Tax laws that avowedly lay a different and higher burden upon a portion only of all those similarly situated, that is, all those among whom no difference 'which bears a reasonable and just relation' to the matter exists (*Gulf etc. Ry. Co.* v. *Ellis*, 165 U. S. 150, 155 [41 L. Ed. 666, 17 Sup. Ct. 255, 257; see, also, Rose's U. S. Notes]), exempting the remaining portion from the burden, are not 'equal laws', and their enforcement would deprive the persons so burdened of the equal protection of the laws. We do not see how this can be fairly questioned.

"That the act does this very thing is clear. The sole distinction between the male inhabitants of California so burdened with the poll tax and those not so burdened, in so far as all matters material to imposition of the tax is concerned, is that the former are aliens and the latter citizens. This is the sole basis of the attempted classification. As was said in *Gulf etc. Ry. Co.* v. *Ellis, supra* (165 U. S. 165 [41 L. Ed. 666, 17 Sup. Ct. 261, see, also, Rose's U. S. Notes]) : 'It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection.' In the case at bar the only difference is such that, in view of the language of section 1 of the fourteenth amendment, relative to equal protection of the laws, it cannot in the nature of things constitute a proper basis for classification, for the plain effect of

that section is to forbid any distinction in such a matter as this based on that fact alone.''

The principles of these cases are especially applicable here. The requirement for a commercial fishing license, as applying to persons bringing in fish caught upon the high seas, with the further provision that such a license cannot be obtained by a nonresident, constitutes an unequal exaction and a greater burden upon persons of the class named than that imposed upon others in the same calling and under the same conditions. In fact the discrimination thus attempted is much more onerous than a mere inequality in taxation, amounting, as it does, to an absolute prohibition. The statute clearly attempts to discriminate against nonresidents in this particular line of work, the only classification attempted being upon the basis of residence. In so far as we are here concerned with this statute, this is not a reasonable ground of classification and it follows that the statute is, to that extent, in violation of the provisions of section 1 of the fourteenth amendment to the Constitution of the United States. It is to be understood that we are not here concerned with any question relating to fish caught or taken in any of the waters within the territorial jurisdiction of the state.

We conclude that section 990 of this code is void and ineffective in so far as it discriminates between residents and nonresidents of the United States with respect to the bringing into the state of fish caught upon the high seas and outside the territorial jurisdiction of this state, and that the demurrer to the complaint was properly overruled.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1935.