[Crim. No. 512. Fourth Appellate District.—June 18, 1938.]

In the Matter of the Application of CHARLES J. LYONS, for Writ of Habeas Corpus.

Charles D. Swanner, Hugh B. Maddox and Thomas L. Mc-Fadden for Petitioner.

W. F. Menton, District Attorney, Preston Turner, Assistant District Attorney, and B. Z. McKinney for Respondent.

HAINES, J., *pro tem.*—This is an original proceeding in *habeas corpus.* The petitioner, Charles J. Lyons, was detained by the sheriff of Orange County under a complaint charging him with violation of an ordinance adopted by the board of supervisors of that county relating to the transportation of garbage and was, pending the disposition of the case herein, admitted to bail by this court. Section 1 of the ordinance undertakes to find as a fact that the bringing of garbage into Orange County from counties outside of Orange County, where large and small centers of population are located, is a menace to the public health, welfare and safety of the citizens of Orange County. Section 2 purports to make it unlawful for any person, association of persons, firm or corporation, to bring or cause to be brought, or haul or transport or ship into the county of Orange, any garbage of any kind or character produced outside of the county of Orange, for any purpose whatsoever. Section 3 provides for fine or imprisonment or both for violating the

provisions of the ordinance, and a subsequent section (6) defines ''garbage'' as meaning:

''All animal and/or vegetable refuse, or residue from kitchens, canneries, bakeries, restaurants, lunch stands, and/or meat, fish, fruit, and/or vegetable markets, and/or other food handling places; and/or household waste and/or residue that shall result from the preparation and/or caring for and/or treatment of food stuffs intended to be used as food, and/or used as such, and/or shall have resulted from the preparation and/or handling of food for human consumption, and/or any decayed or unsound meats, fish, fruit and/or vegetables.''

It appears that the petitioner, Lyons, is the owner of a 20-acre hog ranch located about two and one-half miles west and a half a mile south of Buena Park and something like half a mile on the Orange County side of the line dividing that county from Los Angeles County; that his practice is to feed his hogs one-fourth grain and three-fourths garbage, and to bring the garbage in what are known as garbage tanks from Beverly Hills, in Los Angeles County, to his ranch. What is known as a garbage tank consists of a body on a truck, open at the top except for a canvas cover which covers the whole top and hangs over about a foot and a half over the back, front and the sides. It is not, however, air tight. Garbage is loaded from a garbage dump and about 20 tons of it brought daily to petitioner's ranch, where it is fed directly from the trucks to the hogs, and for that purpose placed on concrete floors. After the hogs are through with it, such refuse as remains is gathered up and used for orchard fertilizer. The accumulations of this refuse are allowed to pile up for from one to three weeks before being actually so used.

The organic matter of which garbage is made up is by its very nature likely to become offensive, and what may or may not be done with it is, therefore, necessarily a subject of public concern. Article XI, section 11, of the state Constitution provides that: ''Any county, city, town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws.''

In *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306 [26 Sup. Ct. 100, 50 L. Ed. 204], the Supreme Court of the United States upheld an ordinance passed by the board of supervisors of the city and county of San

Francisco granting to a concessionaire the exclusive right to maintain a garbage crematory within the city and requiring all collective garbage to be conveyed thither for cremation. After saying that this was no ground for complaint on the part of the householders, the court went on to say:

"Still less has a licensed scavenger a right to complain, for his right to convey garbage and refuse through the public streets, in covered wagons, was derived from the public and he was subject to such regulations as the constituted authorities, in their exercise of the police power, might adopt."

In *Ex parte Casinello,* 62 Cal. 538, the court sustained an order of the board of supervisors of the city and county of San Francisco providing that:

"No person shall throw into or deposit upon any public street, highway, or grounds, or upon any private premises, or anywhere except in such a place as may be designated for that purpose by the Superintendent of Public Streets and Highways, any glass, broken ware, dirt, rubbish, garbage or filth."

The court said *inter alia* (p. 539):

"The objections that the order is oppressive, unjust, and unreasonable are, in my opinion, not well taken. That dirt, rubbish, garbage, and filth are in their nature nuisances, is too plain to admit of controversy; and that glass and broken ware can be very easily converted into nuisances if thrown about promiscuously, is equally plain."

In *In re Zhizhuzza,* 147 Cal. 328 [81 Pac. 955], an ordinance of the city of Oakland was upheld which invested the duly authorized agents, servants or employees of the city with the exclusive right to gather and collect garbage within the city, and made it unlawful for any person, firm or corporation, except as otherwise provided in the ordinance, to collect or gather garbage within the city. The court, quoting from *Ex parte Haskell,* 112 Cal. 412, 416 [44 Pac. 725, 33 L. R. A. 527], and referring to *Ex parte McKenna,* 126 Cal. 429, 432 [58 Pac. 916], and *Ex parte Lemon,* 143 Cal. 558, 563 [77 Pac. 455, 65 L. R. A. 946], said with respect to the question of the reasonableness of a municipal ordinance of the description involved (pp. 332, 333):

"Every intendment is to be indulged in favor of its validity, and all doubts resolved in a way to uphold the lawmaking power; and a contrary conclusion will never be reached upon light consideration. It is the province and

right of the municipality to regulate its local affairs—within the law, of course—and it is the duty of the courts to uphold such regulations, except it manifestly appear that the ordinance or by-law transcends the power of the municipality, and contravenes rights secured to the citizen by the constitution, or laws made in pursuance thereof.''

■ Without further discussion of the general powers of counties or other political subdivisions of the state to regulate the disposition of garbage within their limits, we take it to be the undoubted law that the governing bodies of such political subdivisions, where intrusted generally with the duties of local government therein, are empowered to regulate the handling, transportation and disposition of garbage within the areas over which their jurisdiction extends, and that they may, in pursuance of such powers, require the disposition of garbage in some recognized method and prohibit its disposition in any other way, and that the particular method adopted is ordinarily within the discretion of the governing board or body and that the reasonable exercise of such discretion will not be interfered with by the courts.

With these generally acknowledged and indisputable principles as a basis we proceed to inquire whether the regulation attempted in the instant case is of an essentially different character. What we have to consider in this case is not any question of the right of the board of supervisors of Orange County to regulate or prohibit the transportation of garbage for unnecessary distances on the highways, or the method of its disposition after being transported, but the much narrower question of whether the particular regulation here involved is a reasonable exercise of its power. To put the matter more concretely, there are in Orange County various municipalities, some such as Santa Ana, Fullerton, Orange and Anaheim, of considerable population. The disposition of garbage within each of these municipalities is a matter within the control of their respective governing bodies, whereas outside their limits authority over it belongs to the board of supervisors of the county.

It would, of course, be possible for each of these municipalities to provide for the cremation of such garbage as originates within its limits, without allowing it to be transported beyond them. For all of that, the board of supervisors has seen fit to leave the way open for garbage originating within each of these municipalities and all others within the county,

to be transported thence to any other point within the county, but has fixed upon the county line as a limit across which garbage originating in another county may not be transported.

It is settled that section 11 of article I of the Constitution to the effect that "All laws of a general nature shall have a uniform operation" has no application to ordinances of municipalities or other local bodies. (*Hellman* v. *Shoulters*, 114 Cal. 136, 146 [44 Pac. 915, 45 Pac. 1057]; *In re Zhizhuzza, supra*, p. 334; *In re Gatsios*, 95 Cal. App. 762 [273 Pac. 826].) In *Hellman* v. *Shoulters* the court said (p. 146):

"There is no constitutional provision which expressly requires the uniform operation of municipal ordinances. Nevertheless, where they unjustly discriminate, they are sometimes declared unreasonable, and therefore void."

The criterion to be used in deciding whether they are for that reason unreasonable is, after all, essentially the same used in determining whether general laws have or have not a uniform operation, which is whether or not any classification that they attempt is based upon some "constitutional, or natural, or intrinsic distinction". (*Martin* v. *Superior Court*, 194 Cal. 93, 100 [227 Pac. 762].) If it is so based then the classification and therefore the ordinance is, so far as the distinction made is concerned, reasonable; otherwise it is in that feature unreasonable.

*Abe* v. *Fish & Game Com.*, 9 Cal. App. (2d) 300 [49 Pac. (2d) 608], involved a statute purporting to require a license of every person who assists in the bringing of fish caught on the high seas into the state for sale in a fresh state, and to limit the right to receive such licenses to persons who have continuously resided in the United States for the period of one year. The provision was held invalid and in its decision (p. 303) this court had occasion to discuss at some length certain of the bearings of the inhibition of the Fourteenth Amendment to the Federal Constitution against the denial by any state to any person within its jurisdiction of the equal protection of the laws. As there stated:

"It has been held in this state that a city ordinance fixing a higher license for nonresidents than that required of residents engaged in the same line of business is discriminating and not founded upon any reasonable ground of classifica-

tion. (*In re Hines*, 33 Cal. App. 45 [164 Pac. 339]; *In re Hart*, 36 Cal. App. 627 [172 Pac. 610].)''

Again, in *Abe* v. *Fish & Game Com., supra, In re Kotta*, 187 Cal. 27 [200 Pac. 957], was adverted to, and particularly a discussion therein of the equal protection clause of the federal Constitution and a reference made to *Yick Wo* v. *Hopkins*, 118 U. S. 356 [6 Sup. Ct. 1064, 30 L. Ed. 220], in which it was said that ''the equal protection of the laws is a pledge to the protection of equal laws''. Reference was also made to *Barbier* v. *Connolly*, 113 U. S. 27, 31 [5 Sup. Ct. 357, 359, 28 L. Ed. 923], wherein it was among other things held that the fourteenth amendment requires ''that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and enjoy property; . . . that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition'', etc.

It is, of course, as clearly a discrimination against the inhabitant of another county than Orange to forbid him to dispose of his garbage in Orange County, as it would be to exact from him a higher license fee for conducting some business in Orange County than would be required of a resident of that county for engaging there in the same business. Likewise is it as clearly a discrimination against one inhabitant of Orange County to forbid him to obtain garbage from adjacent counties, when he can get it there more cheaply than in his own county, or when he can get it there when perhaps, by reason of insufficiency of supply, he could not get it in Orange County at all, whereas some other inhabitant of Orange County may, by reason of access to the limited supply of garbage there available, be both able to draw from that supply and to do so at a price with which his neighbor could only compete if allowed to draw his supply from an adjacent county? What reasonable justification is there for this type of discrimination?

The evidence here is that the garbage produced daily within incorporated municipalities in Orange County amounted to only about 29 tons, whereas (we take it as of the date the ordinance was adopted) the amount coming in daily from

outside the county was about 200 tons. Ton for ton it cannot be said, speaking generally, that there is more risk to public health in the handling or transporting on public roads of garbage originating in one locality than that originating in another. Manifestly, however, the greater the quantity the more the risk. That that is the fact is also the testimony of the city health officer.

In the instant case, however, we are not confronted with an ordinance undertaking to limit the amount of garbage, as such, that may be used on hog ranches or elsewhere within the county of Orange, or that may be transported on the public highways of the county. Any amount may be so used and so transported so far as this ordinance is concerned, provided it originates within the county, even though it originates within incorporated areas therein over which the police powers of the board of supervisors do not extend. The sole inhibition attempted has to do with the place of origin of the garbage. Garbage originating, for example, in the city of Whittier in Los Angeles County may not be used in Orange County, even though Whittier may, in distance, be closer to the Orange County ranch, where the garbage is sought to be used, than say Fullerton, which, for illustration we will suppose to be the Orange County city nearest to the same ranch. Between the same quantity of garbage originating on the one hand in Whittier or, on the other, in Fullerton, we are unable to find any sort of "constitutional, or natural, or intrinsic distinction". The existence of the county line in a particular position has no kind of relation to the evil which the ordinance apparently seeks to remedy. In these circumstances the ordinance provisions appear to us purely arbitrary, and by that token unenforceable.

The petitioner is discharged and his bond exonerated.

Barnard, P. J., and Marks, J., concurred.