HOTEL & RESTAURANT EMPLOYEES' INTER-
NATIONAL ALLIANCE, LOCAL NO. 122, ET AL. *v.*
WISCONSIN EMPLOYMENT RELATIONS BOARD
ET AL.

No. 124. Argued January 9, 12, 1942.—Decided March 2, 1942.

*Messrs. I. E. Goldberg* and *Joseph A. Padway* for peti-
tioners.

*Messrs. N. S. Boardman,* Assistant Attorney General of
Wisconsin, and *Herman M. Knoeller* argued the cause for
respondents. *Messrs. John E. Martin,* Attorney General,
and *James Ward Rector,* Deputy Attorney General, were
on the brief with *Mr. Boardman* for the Wisconsin Em-
ployment Relations Board, and *Mr. Walter H. Bender*
was on the brief with *Mr. Knoeller* for the Plankinton
House Company, respondents.

MR. JUSTICE FRANKFURTER delivered the opinion of the
Court.

We brought this case here from the Supreme Court of
Wisconsin, 314 U. S. 590, to canvass the claim that Wis-
consin has forbidden the petitioners to engage in peaceful

picketing insofar as we have deemed it an exercise of the right of free speech protected by the Due Process Clause of the Fourteenth Amendment. *Thornhill* v. *Alabama,* 310 U. S. 88; *American Federation of Labor* v. *Swing,* 312 U. S. 321. The specific question for decision is the constitutional validity of an order made by the Wisconsin Employment Relations Board acting under the Employment Peace Act, Wisconsin Laws of 1939, c. 57. In deciding this question we are of course controlled by the construction placed by the Supreme Court of Wisconsin upon the order and the pertinent provisions of the Act.

These are the undisputed facts. In June 1938, the petitioners, various unions representing hotel and restaurant employees, made a closed shop agreement for a year with the respondent Plankinton House Company, which owned two hotels in Milwaukee. After negotiations between the parties for renewal of the contract failed, the dispute was submitted to arbitration. On October 30, 1939, the Company notified the unions of its willingness to sign a contract in accordance with the terms of the arbitration. Three days later the employees of both hotels went on strike. Members of the unions picketed the hotels, and the Company continued to operate the hotels with new employees. Union pickets forcibly prevented the delivery of goods to one of the hotels. For this conduct two union officials were arrested and fined. One of them returned to the picket line immediately after his arrest, assaulted one of the non-striking employees, and was again arrested and fined. Numerous other outbreaks of violence resulted in the conviction of the offending pickets and occasioned special police measures to maintain the peace.

The Company complained to the Employment Relations Board that the petitioners had committed "unfair labor practices." After due hearing, the Board made findings of fact, not challenged throughout these proceedings.

Upon the basis of these findings, the Board issued the order set forth in the margin.[1]

In accordance with the statutory provisions for judicial review, the petitioners applied to the Circuit Court of Milwaukee County, Wisconsin, to set aside the Board's order. The Board cross-petitioned for enforcement. The Circuit Court sustained the order, and an appeal was taken to the Supreme Court of Wisconsin, which affirmed the judgment and, after further elucidating the meaning of the statute and the order, denied a rehearing. 236 Wis. 329, 352; 294 N. W. 632, 295 N. W. 634.

The Wisconsin statute underlying this controversy was enacted as a comprehensive code governing the relations

---

[1] "It is ordered that the respondent unions, Hotel and Restaurant Employees International Alliance, Local No. 122, International Laundry Workers, Local No. 174, Bartenders International League of America, Local No. 64, International Union of Operating Engineers, Local No. 311, and the Milwaukee Building Trades Council, the officers, members, agents, successors and assigns of each shall:

"1. Immediately cease and desist from:

(a) Engaging in promoting or inducing picketing at or near the Plankinton House or the Kilbourn Hotel;

(b) Attempting to hinder or prevent by threats, intimidation, force or coercion of any kind the pursuit of lawful work by employes of the Plankinton House Company;

(c) Boycotting in any way the Plankinton House Company.

"2. Take the following affirmative action, which the Board finds will effectuate the policies of the act:

(a) Post notices to their members in conspicuous places at the union headquarters that the union has ceased and desisted in the manner aforesaid, and that all officers, members and agents of the union are to refrain from engaging in promoting or inducing picketing and boycotting of the Plankinton House Company, and also to refrain from attempting to hinder or prevent by threats, intimidation, force or coercion of any kind the pursuit of lawful work by employes of the Plankinton House Company.

(b) Notify the Board in writing forthwith that steps have been taken by each of the respondent unions to comply herewith."

between employers and employees in the state. Only a few of its many provisions are relevant here. Section 111.06 provides that it shall be "an unfair labor practice" to "cooperate in engaging in, promoting or inducing picketing, boycotting or any other overt concomitant of a strike unless a majority in a collective bargaining unit of the employes of an employer against whom such acts are primarily directed have voted by secret ballot to call a strike," and to "hinder or prevent, by mass picketing, threats, intimidation, force or coercion of any kind the pursuit of any lawful work or employment, or to obstruct or interfere with entrance to or egress from any place of employment, or to obstruct or interfere with free and uninterrupted use of public roads, streets, highways, railways, airports, or other ways of travel or conveyance." The Act contains a provision expressly dealing with its construction: "Except as specifically provided in this chapter, nothing therein shall be construed so as to interfere with or impede or diminish in any way the right to strike or the right of individuals to work; nor shall anything in this chapter be so construed as to invade unlawfully the right to freedom of speech." § 111.15.

The central attack against the order is that, as enforced by the Wisconsin courts, it enjoins peaceful picketing. Whether Wisconsin has denied the petitioners any rights under the federal Constitution is our ultimate responsibility. But precisely what restraints Wisconsin has imposed upon the petitioners is for the Wisconsin Supreme Court to determine. In its opinion in this case, and more particularly in its explanatory opinion denying a rehearing, the Court construed the relevant provisions of the Employment Peace Act and confined the scope of the challenged order to the limits of the construction which it gave them. That Court has of course the final say concerning the meaning of a Wisconsin law and the scope of administrative orders made under it. *Aikens*

v. *Wisconsin,* 195 U. S. 194; *Senn* v. *Tile Layers Union,*
301 U. S. 468. What is before us, therefore, is not the
order as an isolated, self-contained writing but the order
with the gloss of the Supreme Court of Wisconsin upon
it. And that Court has unambiguously rejected the con-
struction upon which the claim of the petitioners rests.

That the order forbids only violence, and that it per-
mits peaceful picketing by these petitioners, is made
abundantly clear by the expressions of the Court:

"The act does not limit the right of an employee to
speak freely. . . . The term 'picketing', as used in [the
act], does not include acts held in the *Thornhill Case,
supra,* to be within the protection of the constitutional
guaranty of the right of free speech. The express lan-
guage of the act forbids such a construction. It clearly
refers to that kind of picketing which the *Thornhill Case*
says the state has power to deal with 'as a part of its
power to preserve the peace, and protect the privacy, the
lives and the property of its residents'. . . . In this case
it is undisputed that numerous assaults were committed
by the pickets, that the pickets acted in concert; that the
fines of these pickets were paid by the unions; that in-
gress and egress to and from the premises of the em-
ployer were prevented by force and arms. It was at
conduct of that kind that the statute was aimed. It is
conduct of that kind that is dealt with in this case. It is
conduct of that kind that is declared to be an unfair labor
practice by the statute and from which the defendants
are ordered to cease and desist. . . ." And on rehear-
ing: "Under the statute and the order of the board as
interpreted and construed by the explicit language of the
[previous] opinion, freedom of speech and the right
peacefully to picket is in no way interfered with. The
appellants could not be ordered to cease and desist from
something they were not engaged in. . . . The picketing
carried on in this case was not peaceful and the right of

442

free speech is in no way infringed by the statute or the order of the board." 236 Wis. 329, *passim*.

What public policy Wisconsin should adopt in furthering desirable industrial relations is for it to say, so long as rights guaranteed by the Constitution are respected. *Aikens* v. *Wisconsin*, 195 U. S. 194; *Senn* v. *Tile Layers Union*, 301 U. S. 468. As the order and the appropriate provisions of the statute upon which it was based leave the petitioners' freedom of speech unimpaired, the judgment below must be affirmed. Problems that would arise had the order and the pertinent provisions of the Act been otherwise construed by the Supreme Court of Wisconsin need not therefore be considered.

*Affirmed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.