THE COURT.
Section 786.5 of the Fish and Game Code of the State of California as amended in 1941 is as follows:
“ It is unlawful to sell, expose for sale, offer to sell, barter, trade, or have in possession any spiny lobster which has been cooked or otherwise prepared for human consumption outside of the State of California,- This section shall not apply to any canned lobster or other shellfish prepared under the supervision of the Department of Agriculture or the corresponding department of any other State or nation.”
In the present action the defendants Marine Products Company, a corporation, and L. Small, were charged with the violation of the above quoted section 786.5 in that on or about March 5, 1946, in San Diego Township in the County of San Diego, State of California, they “did then and there wilfully and unlawfully sell, expose for sale, offer to sell, barter, trade and have in their possession certain fresh, cooked, spiny lobsters which had been cooked and otherwise prepared for human consumption outside of the State of California, to wit, in the Republic of Mexico.” Originally, the complaint contained certain further allegations which were, however, stricken out on the plaintiff’s motion without objection from the defendants.
Upon their arraignment the defendants moved to dismiss the complaint for failure to state a public offense, in that, *931 according to their contention, the said statutory provision is unconstitutional and void. This motion having been denied, they pleaded “not guilty” and after various continuances the trial proceeded. It was stipulated that on March 5, 1946, the defendants in San Diego Township, County of San Diego, State of California, wilfully had in their possession certain fresh, cooked, spiny lobsters which had been cooked and otherwise prepared for human consumption outside of the State of California, to wit, in the Republic of Mexico. The defendants offered to prove that the said spiny lobsters were cooked and prepared under the supervision of a department of the government of Mexico corresponding to the Department of Agriculture of the United States. The court ruled this offer of proof immaterial, and, both parties having rested, found the defendants guilty and fined them $25 each, from which judgment the defendants’ appeal is prosecuted.
Section 782 of the Fish and Game Code establishes an “open season” for the taking of spiny lobster extending from October first of each calendar year to March fifteenth of the following calendar year. Section 786 permits spiny lobster to be brought into the state from Mexico during the open season. The gist of the complaint, therefore, is that the spiny lobster in the defendants’ possession, not being canned, had been cooked and otherwise prepared for human consumption not in California but in Mexico.
The sole question before us is whether or not the statute involved is constitutional.
Section 8 of article I of the Constitution of the United States empowers the Congress to “regulate commerce with foreign nations and among the several states and with the Indian tribes.”
In pursuance of this power, the Federal Food, Drug and Cosmetic Act recognizes seafoods as proper subjects of commerce (21 U.S.C., § 372a) and in 19 U.S.C.A., section 1201, it is provided that:
“On and after June 18, 1930, except as otherwise specially provided for in this chapter, the articles mentioned in the following paragraphs, when imported into the United States or into any of its possessions (except the Philippine Islands,the Virgin Islands, American Samoa, and the Island of Guam), shall be exempt from duty:
“. . . (Para. 1761) Shrimps, lobsters, and other shellfish, fresh or frozen (whether or not packed in ice), or pre *932 pared or preserved in any manner (including pastes and sauces),' and not specially provided for.”
As was said in Oregon-Washington Railroad & Navigation Co. v. State of Washington, 270 U.S. 87, 93 [46 S.Ct. 279, 70 L.Ed. 482] :
“In the absence of any action taken by Congress on the subject matter, it is well settled that a state in the exercise of its police power may establish quarantines against human beings or animals or plants, the coming in of which may expose the inhabitants or the stock or the trees, plants or growing crops to disease, injury or destruction thereby, and this in spite of the fact that such quarantines necessarily affect interstate commerce.” (Citing Gibbons v. Ogden, 9 Wheat. 1, 203, 205 [6 L.Ed. 23], and Minnesota Rate Cases, 230 U.S. 352 [33 S.Ct. 729, 57 L.Ed. 1511]).
“Such laws undoubtedly operate upon interstate and foreign commerce. They could not be effective otherwise. They cannot, of course, be made the cover for discriminations and arbitrary enactments, having no reasonable relation to health (Hannibal and St. Joseph Railroad Co. v. Husen, 95 U.S. 465, 472, 473 [24 L.Ed. 527]); but the power of the state to take steps to prevent the introduction or spread of disease, although interstate and foreign commerce are involved (subject to the paramount authority of Congress if it decides to assume control), is beyond question.” (Minnesota Rate Cases, supra, p. 406, quoted in Oregon-Washington Railroad and Navigation Co. v. State of Washington, supra, p. 95, and citing Morgan’s etc. Steamship Co. v. Louisiana, 118 U.S. 455 [6 St.Ct. 1114, 30 L.Ed. 237] ; Missouri, Kansas and Texas Railway Co. v. Haber, 169 U.S. 613 [18 S.Ct. 488, 42 L.Ed. 878] ; Louisiana v. Texas, 176 U.S. 1 [20 S.Ct. 251, 44 L.Ed. 347]; Rasmussen v. Idaho, 181 U.S. 198 [21 S. Ct. 594, 45 L.Ed. 820] ; Compagnie Francaise, etc. v. Board of Health, 186 U.S. 380 [22 S.Ct. 811, 46 L.Ed. 1209] ; Reid v. Colorado, 187 U.S. 137, 138 [23 S.Ct. 92, 47 L.Ed. 108] ; Asbell v. Kansas, 209 U.S. 251 [28 S.Ct. 485, 52 L.Ed. 778]).”
Similarly, it is well settled that, in the absence of any action taken by Congress on the subject matter, it is within the competency of the states to forbid the exportation of game taken within their territorial limits on the theory that they are in their sovereign capacities the owners of such game and entitled to confine its use to their inhabitants (Geer v. Con *933 necticut, 161 U.S. 519 [16 S.Ct. 600, 40 L.Ed. 793] ; In re Florence, 107 Cal.App.. 607 [290 P. 652]); or to forbid the possession within their territory or the importation into their territory of game animals, birds or fish under conditions which would further the evasion of their own seasonal or other restrictions on the talcing of such game within their territorial limits, by making it easy for evaders to claim that game possessed by them and actually taken illegally within the territorial limits of the state was taken legally outside its territorial limits and imported. (Silz v. Hesterberg, 211 U.S. 31 [29 S.Ct. 10, 53 L.Ed. 75] ; Ex parte Maier, 103 Cal. 476 [37 P. 402, 42 Am.St.Rep. 129]; Johnson v. Gentry, 220 Cal. 231 [30 P.2d 400]).
In such circumstances, and subject to the paramount right of Congress to regulate interstate and foreign commerce, the circumstance that the state legislation affects such commerce is not deemed any reason for holding it invalid. This, however, is, in general, true only where the federal government has' not, through appropriate legislation, occupied the field, for where it has not only undertaken to deal with the subject but enacted legislation broad enough in scope to cover it, such legislation in ordinary cases under the federal Constitution necessarily supersedes all right on the part of the state government to deal with the matter at all.
There is, to be sure, some distinction as concerns the respective spheres of the federal and state governments, between state regulations for purposes of sanitation and state regulations intended to conserve the local game supply. While both may affect interstate and foreign commerce, quarantine regulations are not based on any theory that the commodity against which the quarantine is declared is not legitimately an article of commerce, but are based merely upon the proposition that though generally an article of commerce there is some reason affecting the health of the community or the immunity of its inhabitants, livestock or agricultural products from disease which demands that the article involved be excluded. In the case of game, however, an additional principle is involved, namely that creatures ferae naturae, because they are the property of the state, may only become the subject of commerce by its consent. Where, however, as in the case of spiny lobster, the article involved is recognized by the state itself, as a legitimate object of commerce, as spiny lobster is *934 specifically so recognized by section 786 of the Pish and Game Code, this argument as applied to the respective spheres of the state and federal governments is of strictly limited application (Foster etc. Packing Co. v. Haydel, 278 U.S. 1 [49 S.Ct. 1, 73 L.Ed. 147]). It may still be available where the regulation involved has to do with the manner of taking the game within the territorial limits of the state (In re Florence, supra, p. 614), but it can in such circumstances hardly be stretched to the point of upholding, in conflict with federal law, a state enactment forbidding or regulating the importation of the game involved.
It is, in fact, here urged that the provisions of section 786.5 under attack are no bona fide attempt, either on the one hand to prevent infringement of the laws of California having to do with the taking of spiny lobster within its limits or prescribing the seasonal limits for taking spiny lobster or the sizes of such lobster that may be taken, or on the other hand, any bona fide attempt to protect the healthfulness of spiny lobster meat for human consumption; but are mere attempts to erect a barrier against cooked but uneanned spiny lobster for the financial benefit of those engaged in the lobster industry in California as against those who cook spiny lobster elsewhere, and that the statute, therefore, is not really an effort to exercise any power left to the state by the federal Constitution, but a mere attempt to protect California industry against competition from elsewhere, and therefore no mere incidental interference with interstate and foreign commerce but a bald usurpation by the state of power exclusively vested in Congress, and as such, void under such authorities as Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511 [55 S.Ct. 497, 79 L.Ed. 1032], Such a proposition, under the terms of the statute, is unquestionably arguable; and it may be urged with some show of logic that the statute does not on its face appear to be a legitimate police regulation at all but a mere arbitrary interference with the liberty of the individual of the type involved in such cases as In re Lyons, 27 Cal.App.2d 182 [80 P.2d 745], (but see Witt v. Klimm, 97 Cal.App. 131 [274 P. 1039].) The presumption of validity attaches, however, to an act of the Legislature purporting to have been enacted in pursuance of the police power, and, therefore, if there is any tenable theory upon which the legislation can be held to further any legitimate concern of the state, it must, as against that species of attack, be upheld.
*935 Whether “spiny lobster,” however, is or is not included properly within the designation of “lobster” it is certainly shellfish, and the federal statute quoted provides for the importation both of lobster specifically and of shellfish generally “fresh or frozen” or “prepared or preserved in any manner (including pastes or sauces).”
It appears to us, then, that in this instance the field has been fully occupied by congressional enactment and therefore that, under the commerce clause of the federal Constitution, state legislation on the subject is excluded, and consequently that we are spared the need for entering into any extensive analysis of section 786.5 for the purpose of discovering whether, had not federal legislation covered the ground, it could be maintained as a legitimate exercise of the authority of the state and only incidentally affecting state or foreign commerce. Regardless of any such inquiry and because Congress has fully covered the field, we must hold that the statute, as applied to the instant case, is inoperative.
One other contention made for the plaintiff should be noticed. Counsel call our attention to the fact that an application was made to the District Court of Appeal for the Fourth District for a writ of prohibition forbidding the municipal court to enter upon the trial of the case at bar on the ground that the statute involved was invalid and invested it with no jurisdiction to proceed, and that such application was denied without the rendition of any opinion; also that an application for hearing of the matter thereupon made to the Supreme Court was also denied by that court without an opinion. It is claimed as a result that the validity of the statute attacked is res adjudicata. There is no substance in the contention. Neither the proceeding in the District Court of Appeal nor the refusal of the Supreme Court to review it were adverted to at the actual trial before the municipal court, nor do they form any part of the record before us. Even if we are entitled to take notice of them upon the present appeal, however, these proceedings are wholly inconclusive as respects the question now before us. The writ of prohibition may have been denied for the mere reason that the appellate and Supreme Courts did not consider it necessary to anticipate the determination of the trial court upon the validity of the statute and saw no exigency justifying their interposition.
The judgment is reversed.
*936 OPINION ON PETITION FOB EEHEABING