[Sac. No. 5823. In Bank. Feb. 5, 1948.]

NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Respondent, v. LUMBER & SAWMILL WORKERS' UNION, UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA (an Unincorporated Association) et al., Appellants.

Clarence E. Todd, Henry C. Todd and Gordon W. Mallatratt for Appellants.

Geary & Tauzer, C. J. Tauzer and A. Dal Thomson for Respondent.

CARTER, J.—This is an appeal from an order granting a preliminary injunction issued in an action for injunctive relief against and damages for picketing. Plaintiff is a corporation operating a railroad common carrier, and particularly, in the instant case, engaged as a common carrier in hauling logs and lumber products between points in northern California for various lumber companies and mills. Defendants are unions and the representatives and members thereof between whom and the lumber companies a labor dispute exists. There is no labor dispute between plaintiff and defendants.

The complaint charges that by reason of the labor dispute with the lumber companies, defendants have caused the lumber companies and their products to be designated unfair and

are endeavoring to cripple the business activities of those companies and prevent the transportation by plaintiff of such products; that to that end defendants have advised plaintiff that if it transports the lumber companies' products, its places of business will be picketed, including its tracks, for the purpose of coercing plaintiff's employees to cease serving plaintiff, thus preventing plaintiff from transporting the companies' products; that defendants have interrupted and interfered with plaintiff's common carrier operations, have threatened plaintiff's train crews with violence and bodily injury if they handle the companies' products; that in this connection defendants have on occasion attempted to stop plaintiff's trains by placing a "large number" of pickets across plaintiff's main line tracks and have stopped one of plaintiff's trains by placing a "solid phalanx" of pickets who were in a place of danger from injury by plaintiff's trains and who waved, shouted, stood close to the tracks and threatened to injure the train crew; that plaintiff's employees refused to pass through the picket lines because of defendants' threats and fear of bodily injury, and plaintiff has no means of compelling them to do so.

From the evidence and affidavits considered at the hearing prior to issuing the preliminary injunction, viewed most favorably to plaintiff as it must be inasmuch as the injunction was granted, it appears that between September 23d and 30th, 1946, defendants maintained picket lines at points where plaintiff's main line traversed highways at grade in Sonoma County, many miles removed from the location of the lumber companies with whom the labor dispute existed, while plaintiff's trains were operating as common carriers on its line. No weapons were displayed by the pickets, nor were acts of physical violence committed or directly threatened by them. The trains carried various kinds of freight including products of the lumber companies. The pickets carried banners bearing such statements as "unfair to organized labor," followed by the names of the lumber companies. There was evidence that some of the banners advised, in addition, that this operation is unfair to organized labor. The number of pickets ran as high as 90. On several occasions upon the approach of a train to the crossing the pickets would gather in a compact group directly on the tracks upon which the train was traveling and, instead of giving way for the passage of the train when the whistle and bell were sounded, the pickets

would draw their ranks closer together. The crews of the trains brought the trains to a stop, and it may be inferred that they did so because of the picketing and the way in which it was conducted as above described. Some members of the train crews stated that they stopped their trains for fear of physical violence to themselves if they went through the picket lines, and others feared injury to the pickets if they continued operation of the trains. After a conversation between the pickets and the train crew the train was permitted to proceed if none of the freight carried by it was a product of any of the lumber companies. The vice president of plaintiff was present at the picket line a portion of the time and testified that the crews of the trains would not take them through the lines although he ordered them to do so.

The preliminary injunction restrained defendants from (1) using against plaintiff or its employees "force or violence" in connection with picketing of plaintiff's trains, premises, or goods transported by it; (2) "Hindering, delaying, interfering with, or in any manner obstructing the operation of trains, or any part thereof, of the plaintiff," by picketing upon or across plaintiff's tracks or right of way or upon grade crossings "during the approach of trains, or any part thereof, to such crossings, or in any manner whatsoever." (3) Picketing the tracks, trains or premises of plaintiff or its employees or goods transported by it "for the purpose of causing, compelling, persuading, inducing, demanding or coercing plaintiff, or its . . . employees . . . to refuse to . . . transport, . . . or handle any goods or freight, or to make or grant any preference or advantage to, or subject to any discrimination, prejudice or disadvantage, any person or corporation, in respect to services or facilities furnished or to be furnished by plaintiff, as a common carrier, or by its agents, employees or representatives." (4) Engaging in any "act, combination, agreement or concerted activity to cause, persuade, induce, compel or coerce the employees, . . . of the plaintiff [or plaintiff] to refuse to handle any goods of any shipper, . . . or patron of plaintiff, or to discriminate for against any . . . patron of plaintiff in connection with the . . . handling of . . . freight . . . belonging to any . . . patron of plaintiff, . . . and from in any manner interfering with or obstructing the trains, or any part thereof, or the tracks, switches, team tracks, sidings, or other equipment or facilities of plaintiff in order to accomplish, or for the purpose, or with the

intent of carrying out or effectuating the agreement, combination or concerted activity enjoined herein.''

■ It is true that the publicizing of a labor dispute by picketing has been identified with the constitutional guaranties of freedom of speech, press and assembly. (*In re Blaney,* 30 Cal.2d 643 [184 P.2d 892]; *Thomas v. Collins,* 323 U.S. 516 [65 S.Ct. 315, 89 L.Ed. 430]; *Cafeteria Union v. Angelos,* 320 U.S. 293 [64 S.Ct. 126, 88 L.Ed. 58]; *Hotel Employees' Local v. Board,* 315 U.S. 437 [62 S.Ct. 706, 86 L.Ed. 946]; *Bakery Drivers Local v. Wohl,* 315 U.S. 769 [62 S.Ct. 816, 86 L.Ed. 1178]; *Carpenters Union v. Ritter's Cafe,* 315 U.S. 722 [62 S.Ct. 807, 86 L.Ed. 1143]; *A. F. of L. v. Swing,* 312 U.S. 321 [61 S.Ct. 568, 85 L.Ed. 855]; *Carlson v. California,* 310 U.S. 106 [60 S.Ct. 746, 84 L.Ed. 1104]; *Thornhill v. Alabama,* 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093]; *Senn v. Tile Layers Union,* 301 U.S. 468 [57 S.Ct. 857, 81 L.Ed. 1229]; *In re Porterfield,* 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675]; *Park & T. I. Corp. v. International etc. of Teamsters,* 27 Cal.2d 599 [165 P.2d 891, 162 A.L.R. 1426]; *James v. Marinship,* 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]; *Emde v. San Joaquin County etc. Council,* 23 Cal.2d 146 [143 P.2d 20, 150 A.L.R. 916]; *People v. Dail,* 22 Cal.2d 642 [140 P.2d 828]; *Magill Bros. v. Building Service etc. Union,* 20 Cal.2d 506 [127 P.2d 542]; *In re Bell,* 19 Cal.2d 488 [122 P.2d 22]; *Steiner v. Long Beach Local No. 128,* 19 Cal.2d 676 [123 P.2d 20]; *McKay v. Retail Auto S.L. Union No. 1067,* 16 Cal.2d 311 [106 P.2d 373]; *In re Lyons,* 27 Cal.App. 2d 182 [80 P.2d 745].) Such identification, however, does not free picketing from all restraint. (*Carpenters Union v. Ritter's Cafe, supra; Milk Wagon Drivers Union v. Meadowmoor Co.,* 312 U.S. 287 [61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200]; *Steiner v. Long Beach Local No. 128, supra; Magill Bros. v. Building Service etc. Union, supra.*) And it appears to be settled that injunctive relief against picketing is available where the object sought to be achieved or the means used to achieve it are unlawful. (See, *Park & T. I. Corp. v. International etc. Teamsters, supra; James v. Marinship, supra; Magill Bros. v. Building Service etc. Union, supra; Dorchy v. State of Kansas,* 272 U.S. 306 [47 S.Ct. 86, 71 L.Ed. 248]; *Milk Wagon Drivers Union v. Meadowmoor, supra; Carpenters Union v. Ritter's Cafe, supra; Allen-Bradley Local v. Board,* 315 U.S. 740 [62 S.Ct. 820, 86 L.Ed. 1154]; *Burlington Transp. Co. v. Hathaway,* 234 Iowa 135

[12 N.W.2d 167, 149 A.L.R. 1238] ; *Opera on Tour* v. *Weber*, 285 N.Y. 348 [34 N.E.2d 349, 136 A.L.R. 267], cert. denied 314 U.S. 716 [62 S.Ct. 477, 86 L.Ed. 570] ; Rest., Torts, §§ 775, 784 et seq.; 31 Am.Jur. 934, 935, 948, 949; 41 Mich.L.Rev. 1143-1164; 90 U. of Pa. L.Rev. 227, 229.) We must, therefore, give consideration to the problems, first, the validity of the object sought to be achieved, and, second, the lawfulness of the means employed to achieve such object. In one sense it might be said that the object or purpose was to obtain proper labor objectives, namely, the granting of the demands made on the lumber companies for improved working conditions. Then the object would be valid, but the means—seeking to compel the plaintiff to refrain from performing its law imposed duties as a common carrier, would be unlawful. If it is said that the object was to cause plaintiff to refuse to abide by its obligations to the lumber companies as a common carrier, then the object would also be unlawful.

■ Plaintiff, as a railroad common carrier, is under a duty imposed by the Constitution and statutes of this state to accept freight for transportation from all shippers and to refrain from discrimination in the service rendered to them. (Cal. Const., art. XII, § 21; Public Utilities Act, Stats. 1915, p. 115, as amended, §§ 13(b), 17, 19, 2 Deering's Gen. Laws, Act 6386; Civ. Code, §§ 2169, 2170.) And sanctions are imposed for violations. (Public Utilities Act, §§ 73, 75, 76, 77, 81.) It has been held that interference with the performance by a common carrier of its duties, by union activities in a labor dispute with a third party, may be enjoined. (*Burlington Transp. Co.* v. *Hathaway, supra;* see 149 A.L.R. 1243.) In the instant case it is clear from the evidence, including the complaint, that a case was made out by plaintiff in showing interference in the performance of its duties as a common carrier by the concerted activities of defendants in a labor dispute between defendants and third parties, the lumber companies. The object of the activity as well as the means employed to accomplish it would thus be unlawful—preventing or attempting to prevent the carrier from carrying out its statutory obligations—hence injunctive relief would appear to be proper.

The solution of labor problems requires, however, an approach with a broader perspective. Although literally, and in a strict sense, the objective or means employed in the union activity may be unlawful, there still remains the necessity for

preserving the general public welfare and the constitutional guaranties of freedom of speech, press and assembly. The asserted illegality may be merely incidental or of only minor importance when weighed against the requirement of competition and some measure of equality in the economic struggle between the seller and purchaser of services. The public interest may tip the scales one way or the other. If preventive relief were available in every instance of labor activity interfering with the performance by a common carrier or other public utility of its duties, or involving some unlawful act, no matter how insignificant on the part of the person upon whom the economic pressure is exerted, conceivably there would be little left in the way of protection for the exercise of the fundamental rights of freedom of speech, press and assembly, and organized labor would be at a serious if not hopeless disadvantage in our competitive economy. For illustration, the employees of the carrier or other public utility should be able to bring direct concerted pressure, such as strikes and picketing against their employer, to better their working conditions, yet their activities could well be an interference with the duties of the carrier or utility to the point that the latter could not serve the public. It must therefore follow that the peaceful picketing of an employer involved in a dispute to achieve an unquestionably proper objective might require that there be some incidental interference with a carrier or a public utility. There might be no other place or way for the employees to publicize their dispute. Typical of such a case would be where the only entrance to the employer's (with whom the dispute existed) premises was also the point of entry for a spur track of a common carrier serving the employer.

In the case at bar the lumber mills involved in the labor dispute with defendants are many miles from the scene of defendants' picketing activities of plaintiff's trains and premises. There is no dispute between plaintiff and defendants. Hence there is not such an economic necessity for defendants to publicize their dispute by picketing plaintiff's premises at the point where its trains cross highways, as will override the vital importance of the proper functioning of plaintiff as a common carrier in carrying out its constitutional and statutory imposed duties. Not only does the public welfare tip the scales in favor of preventive relief, but under these circumstances, plaintiff should not be required to run

the risk of the sanctions imposed by law for its failure to perform those obligations. Finally, what has been said answers defendants' contention that if it is lawful for the carrier's employees to strike or picket the carrier in a dispute with it, it is also lawful for the employees of a third party to picket the carrier to persuade its employees to withhold their services from their employer. The economic aspects and necessities of the case are not similar.

It is urged that there was no showing of injury to plaintiff. But it must be conceded it was faced with the risk of incurring the sanctions imposed by law for a failure to perform its duties as a common carrier. That in itself is sufficient. Moreover it is evident from the evidence adduced that its trains were stopped. Such result was clearly injurious to it.

There was no violence or threat thereof, claim defendants, and hence there should be no injunction covering that field. It will be remembered however that the complaint charged defendants with having threatened the train crews with violence and bodily injury and some members of the train crew testified they feared physical injury to themselves if they passed the picket lines.

The fourth paragraph of the preliminary injunction is too broad. It enjoins any act, agreement or concerted activity to persuade or induce plaintiff or plaintiff's employees to refuse to handle goods of patrons. Such conduct by picketing is adequately covered in the other paragraphs of the injunction. Under paragraph 4, it would be a violation of the injunction to agree to make or to make editorial comment in a newspaper for the purpose of persuading plaintiff to withhold services. For the reasons above discussed, equitable relief does not extend that far, even if the purpose or means be unlawful. It will not restrain the commission of a libel or slander, for that is prior censorship—a basic evil denounced by the Constitutions of the United States and California in protecting freedom of speech and press. It has been held that where the speech is expressed by picketing equity will give relief. (See *Magill Bros.* v. *Building Service etc. Union, supra.*) But where there is no picketing we have the "principle that equity will not grant injunctive relief against the publication of what might be, after publication, a libel or slander. (*Dailey* v. *Superior Court,* 112 Cal. 94 [44 P. 458, 53 Am.St.Rep. 160, 32 L.R.A. 273]; *In re Wood,* 194 Cal. 49, 60 [227 P. 908]; cf. *People* v. *Armentrout,* 118 Cal.App.

(Supp.) 761, 769 [1 P.2d 556]; *Goldberg, Bowen & Co.* v. *Stablemen's Union,* 149 Cal. 429, 434 [86 P. 806, 117 Am.St. Rep. 145, 9 Ann.Cas. 1219, 8 L.R.A.N.S. 460].) . . . If defendants had remained at home and had uttered false statements concerning plaintiff, the rule cited might have been relied upon. . . . the publication of false statements alone will not justify equitable relief, it is the nearly unanimous rule throughout the country that equity will intervene where false or fraudulent statements are combined with picketing and where, under local policy, this renders the picketing illegal.'' (*Magill Bros.* v. *Building Service etc. Union, supra,* p. 509.) It is said in *Near* v. *Minnesota,* 283 U.S. 697, 713 [51 S.Ct. 625, 75 L.Ed. 1357] : ''If we cut through mere details of procedure, the operation and effect of the statute in substance is that public authorities may bring the owner or publisher of a newspaper or periodical before a judgment upon a charge of conducting a business of publishing scandalous and defamatory matter—in particular that the matter consists of charges against public officers of official dereliction —and unless the owner or publisher is able and disposed to bring competent evidence to satisfy the judge that the charges are true and are published with good motives and for justifiable ends, his newspaper or periodical is suppressed and further publication is made punishable as a contempt. *This is of the essence of censorship.* . . . The question is whether a statute authorizing such proceedings in restraint on publication is consistent with the conception of the liberty of the press as historically conceived and guaranteed. In determining the extent of the constitutional protection, it has been generally, if not universally, considered that it is the chief purpose of the guaranty to prevent previous restraints upon publication. The struggle in England, directed against the legislative power of the licenser, resulted in renunciation of the censorship of the press. . . . This court said, in *Patterson* v. *Colorado,* 205 U.S. 454, 462 [27 S.Ct. 556, 51 L.Ed. 879] : 'In the first place, the main purpose of such constitutional provisions is ''to prevent all such previous restraints upon publications as had been practiced by other governments,'' and they do not prevent the subsequent punishment of such as may be deemed contrary to the public welfare. *Commonwealth* v. *Blanding,* 3 Pick. (Mass.) 304, 313, 314 [15 Am. Dec. 214] : *Respublica* v. *Oswald,* 1 Dallas, 319, 325 [1 L.Ed.

155, 1 Am.Dec. 246]. The preliminary freedom extends as well to the false as to the true; the subsequent punishment may extend as well to the true as to the false. This was the law of criminal libel apart from statute in most cases, if not in all. *Commonwealth* v. *Blanding,* ubi sup.; 4 Bl.Com. 150.' . . . As has been noted, the statute in question does not deal with punishments; it provides for no punishment, except in case of contempt for violation of the court's order, but for suppression and injunction, that is, for restraint upon publication.'' Moreover paragraph 4 of the preliminary injunction is too broad and cannot stand for the same reasons that the Hot Cargo Act was declared invalid in *In re Blaney, supra.*

The preliminary injunction is modified by striking therefrom the fourth paragraph, and as so modified, is affirmed. The temporary restraining order having been dissolved and merged in the preliminary injunction, the appeal therefrom is dismissed.

Gibson, C. J., Traynor, J., and Schauer, J., concurred.

Edmonds, J., and Spence, J., concurred in the judgment.

SHENK, J.—I concur in the affirmance of the first, second and third paragraphs of the injunction order, but I discover no necessity or propriety in striking the fourth paragraph from the order. There is nothing in the record which indicates in the slightest degree that the fourth paragraph of the injunction was intended to apply to editorial comment nor anything which could come within the proper exercise of free speech, press and assembly. It was directed against unlawful combinations denounced by the Hot Cargo Act (Lab. Code, §§ 1131-1134) which act was, in my opinion, unjustifiably declared invalid in *In re Blaney,* 30 Cal.2d 643 [184 P.2d 892]. The judgment of injunction should be affirmed in its entirety.

Appellants' petition for a rehearing was denied March 4, 1948.