[L. A. No. 21803. In Bank. Mar. 10, 1953.]

HARRY RUBIN, Respondent, v. AMERICAN SPORTSMEN TELEVISION EQUITY SOCIETY et al., Appellants.

[L. A. No. 21847. In Bank. Mar. 10, 1953.]

MIKE HIRSCH ENTERPRISES, INC., Respondent, v. AMERICAN SPORTSMEN TELEVISION EQUITY SOCIETY et al., Appellants.

Richard A. Perkins and W. M. Freiburghouse for Appellants.

John C. Stevenson and Lionel Richman as Amici Curiae on behalf of Appellants.

Cyril Moss and George Appell for Respondents.

SHENK, J.—The appeals in these cases are by the defendants from preliminary injunction orders. The plaintiffs commenced the actions for injunctive relief against the same

defendants to restrain picketing after the plaintiffs' refusal to sign a tendered labor agreement on behalf of wrestlers performing in television events. Essentially similar circumstances are involved in each case. The hearing on the application for a preliminary injunction disclosed the following alleged and averred salient facts:

The plaintiffs are promoters of professional wrestling matches in Los Angeles County. They book the contestants and pay them for their activity as wrestlers. The wrestling events have been televised since April, 1950, through the offices of a telecasting corporation which pays a compensation directly to the participants for television rights. The licensing and regulation of wrestling contests are under the jurisdiction of the State Athletic Commission.

The defendant American Sportsmen Television Equity Society, Inc., herein called Television Equity or the society, is a corporation organized in this state with its principal place of business in Los Angeles County. The individual defendants, at least one of whom is a wrestler, are officers and directors of the corporation. Television Equity is not affiliated with a labor organization although an unsuccessful attempt was made to affiliate with the American Federation of Labor. The society has filed with the United States Department of Labor copies of its constitution, by-laws, and certain reports and affidavits required by the Labor-Management Relations Act, 1947. These documents are not included in the record. The society has been certificated by the National Labor Relations Board as having complied with the requirements. Forms of application for membership in Television Equity and of a labor agreement, designated as a "Code of Fair Play," are in the record. To the plaintiffs' knowledge none of the booked wrestlers is a member of the organizaiton.

In September and October of 1950 the defendants asked the plaintiffs to sign the labor agreement which would require them to book only wrestlers who are or would become members of Television Equity. The plaintiffs refused the request on the ground that the society was not a bona fide labor organization. Thereupon the defendants placed or threatened to place pickets at the entrances to the arenas. The plaintiffs filed their complaints and obtained an order to show cause. The hearing was had on the verified complaints and on affidavits filed by the defendants. The appeals present for review the propriety of the action of the court pursuant to its dis-

cretionary power in ordering the preliminary injunction pending a hearing on the merits.

The matter of state jurisdiction is argued. Since the question of the defendants' claimed organizational and picketing rights concerns wrestlers whose contests are televised, it is assumed that the events are in interstate commerce. This involvement is also implied in the certification by the National Labor Relations Board of the society's compliance with requirements for the filing of reports and affidavits under the federal labor relations law. But there has not been any determination by that board of the wrestlers' employment relation status.

Section 2 (3) of the National Labor Relations Act (July 5, 1935, 49 Stats. 449, 450, ch. 372, 29 U.S.C.A. § 152(3)), as amended by the Labor Management Relations Act, 1947 (61 Stats. 137) expressly excludes from coverage as an employee "any individual having the status of an independent contractor." The plaintiffs contend that the wrestlers are independent contractors and therefore not covered by the federal law. On the other hand the defendants seek a judicial determination that the wrestlers are "employees" because they receive from the plaintiffs some instruction relating to the kind of holds and maneuvers to be used to give color to the contest.

The evidence in the record is neither clear nor conclusive that the wrestlers are employees and not independent contractors. Nor do the facts necessarily support a conclusive determination that the wrestlers have no employment relation with the plaintiffs. (*Cf. National Labor Relations Board* v. *Hearst Publications,* 322 U.S. 111 [64 S.Ct. 851, 88 L.Ed. 1170].) On the present showing the trial court was justified in coming to the tentative conclusion that the relationship falls into that characterized in the Hearst case as "entrepreneurial enterprise," rather than into employment subject to the protections of the federal act. The present record suggests no obstruction to the free flow of commerce which would be served by employment coverage under the federal labor law. Contrary to the considerations involved in the Hearst case, the economic factors of the relation between the plaintiffs or the television corporation and the wrestlers do not bear more closely on employment than they do on independent contractual relationships. The factual problem involved because of exclusion of independent contractors from the federal act is not necessarily finally re-

solved by the issuance of the preliminary injunction. The question of the existence of the employment relationship is one which it is assumed will be determined on the trial of the action.

Assuming in accordance with the presently implied conclusion of the trial court that the wrestlers are independent contractors, the defendants nevertheless contend that Television Equity has the right to exercise power as a labor organization and to publicize the labor interest by picketing the arenas. They rely on *Bakery & P. Drivers & H., I.B.T.* v. *Wohl,* 315 U.S. 769 [62 S.Ct. 816, 86 L.Ed. 1178]; *Riviello* v. *Journeyman Barbers etc. Union,* 88 Cal.App.2d 499 [199 P.2d 400]; (*cf. Bautista* v. *Jones,* 25 Cal.2d 746 [155 P.2d 343]), and similar cases.

The plaintiffs do not question the general principles involved in the cases relied upon but contend that the defendant corporation is not a bona fide labor organization, that it does not have trade union status, that there is no legitimate labor interest involved, and that a color of labor interest has been assumed for the purpose of competing with the plaintiffs for control of the television rights of wrestlers in the Los Angeles area.

The principles relied on do not preclude careful scrutiny into the bona fides of the organization and its asserted right of representation. In fact the issues tendered would seem to require the court on the trial to investigate all of the surrounding circumstances. If the jurisdictional issue is resolved by a determination that the wrestlers are independent contractors, judicial investigation of the bona fides of the defendant as a labor organization can take place only in the state forum.

The attempt to qualify as a labor organization under the federal act does not settle the question here. (See *International Brotherhood, C.W. & H. Union* v. *Hanke,* 339 U.S. 470 [70 S.Ct. 773, 94 L.Ed. 995, 13 A.L.R.2d 631]; *Building Service Emp. Intl. Union* v. *Gazzam,* 339 U.S. 532 [70 S.Ct. 784, 94 L.Ed. 1045]; *Bautista* v. *Jones, supra,* 25 Cal.2d 746.) As clearly pointed out in those cases, the issues are not so much matters of constitutional right as they are problems presented to the state in the application of state policy in an endeavor to maintain peaceful labor-management equilibrium.

No simple test may be applied to determine the questions of the labor interest or of labor representation. As stated in *National Labor Relations Board* v. *Hearst Publica-*

*tions, supra,* 322 U.S. at p. 134, the wide variations in the forms of employee self-organization and the complexities of modern industrial organization make difficult the use of inflexible rules as the test.

It is contended that independent contractors in certain circumstances may not assert a right to remain unorganized. The plaintiffs urge that the wrestlers have that right. They state that any competitive interest is for control between equal industrial combatants or lies solely within the ranks of the wrestlers on the question whether or not to unionize; that consequently no legitimate labor interest has been shown, and therefore no reasonable relation to collective bargaining has been offered by Television Equity on behalf of the wrestlers.

It appears from the defendants' affidavits that the purpose of Television Equity is to engage in collective bargaining concerning wages and other conditions of employment of various sports artists who engage or may be employed to appear in television programs; to advance the welfare of sports artists who appear in television programs of any nature, and to preserve their rights of self-organization and their rights to bargain collectively including rights to engage in concerted activity for that purpose.

Television Equity became an unincorporated association early in 1949 and was organized as a corporation in August, 1950. Its constitution and by-laws were filed with the Labor Department in September, 1949, and it was certificated on October 16, 1950, as having complied with report and affidavit filing requirements of the federal law. The membership application form designates Television Equity as the bargaining representative whether the purpose of bargaining relates to conditions in televised events or otherwise; but the averred corporate objectives and the contract offered to the plaintiffs concern the conditions relating to sports artists appearing in televised events. It is averred that the membership of the corporation at the time of hearing consisted of forty wrestlers working in the Los Angeles area. There is no statement as to whether the members appear in television programs.

The record justifies the inference that labor status of Television Equity has been sought to facilitate its membership organization work in the Los Angeles area by the exercise of the coercive measures. The reasonable inferences

from the facts support a conclusion that the defendants have not yet established the labor interest and the competition with organized labor which might secure Television Equity's position to demand recognition as the appropriate bargaining agent for televised wrestlers in the plaintiffs' arenas. The facts so far presented indicate a serious doubt as to the existence of the elements which would support the defendants' claim of bona fide collective bargaining agency on behalf of the wrestlers booked by the plaintiffs in televised events. ▇▇ Concerted activity for an objective which is not reasonably related to any legitimate interest of organized labor may be enjoined. (*Building Service Emp. Intl. Union* v. *Gazzam, supra,* 339 U.S. 532.) ▇▇ The doubt thus created supports a conclusion of the desirability to retain the status quo of the parties pending a hearing on the merits. The trial court has so concluded by the issuance of the preliminary injunction orders. It did not abuse its discretion in making that determination, nor in concluding that as between the parties the plaintiffs were more likely to be injured by a denial of the requested temporary relief than that the defendants were likely to sustain injury by the granting of the preliminary injunction. (*Riviello* v. *Journeymen Barbers etc. Union, supra,* 88 Cal.App.2d 499, 510.)

The orders are affirmed.

Edmonds, J., Schauer, J., and Spence, J., concurred.

Gibson, C. J., concurred in the judgment.

CARTER, J.—I dissent.

I cannot agree with either the reasoning or the result reached in the majority opinion. I would write the opinion in this case as follows:

From their verified complaints and affidavits, viewed most favorably for plaintiffs, it appears that plaintiffs are promoters of professional wrestling matches in Long Beach and Ocean Park, respectively. Defendants are American Television Equity Society, and officers and directors of the society.

According to the affidavit of the society's president, it is a nonprofit corporation organized under the laws of California primarily for the purpose of acting as collective bargaining agent for its members in respect to improving conditions of employment of various "sports artists" who appear on television programs and to establish rules of fair play. In

September, 1949, its predecessor, an unincorporated association, filed with the National Labor Relations Board an application for recognition as a labor organization under the National Labor Management Relations Act. Later it filed a similar application and was accorded recognition by the board as such an organization. Among its members are professional wrestlers licensed by the California State Athletic Commission. In its form of application for membership the applicant states that he appoints the society as his bargaining agent. Plaintiffs allege in their complaints, however, that the society is not "an organization, or agency, or employee representation committee, or any local unit thereof, in which employees participate or exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, hours of employment, or conditions of work, as provided in Section 1117 of the Labor Code of the State of California. . . . [S]aid Society, Inc., was organized for the purpose of compelling certain professional wrestlers in the State of California to become members of, or affiliated with, said defendant corporation so that defendants could and would receive a percentage of the money paid to said wrestlers for their television rights."

There is a dispute as to whether the wrestlers appearing in plaintiffs' arenas are their employees or independent contractors. The complaints allege that the relationship of employer-employee does not exist; that plaintiffs "book" the wrestlers for performances and have an agreement with a "certain" corporation under which the latter has the right to televise the matches, for which right the corporation pays the wrestlers; that plaintiffs exercise no control over the manner or method of performance by the wrestlers. Defendants' affidavits are to the contrary.

Further, it is alleged that none of the wrestlers performing in matches promoted by plaintiffs belong to the society. In September, 1949, defendants combined to injure plaintiffs' businesses, by claiming falsely that the society was a bona fide labor organization to safeguard the interests of employees, and that a labor dispute between plaintiffs and the society existed, when in fact its purpose was to compel wrestlers to become members of it so it could receive a percentage of the money paid them for television rights, and that no labor dispute exists. (This is denied by defendants.) To carry out its purpose of obtaining a percentage of the

wrestlers' pay, defendants demanded that plaintiffs sign an agreement with the society that plaintiffs would use only wrestlers who are or will become members of the society. Plaintiffs refused to agree and defendants have picketed and threaten to continue to picket their places of business to compel them to sign such an agreement. The pickets carried a sign stating ''unfair to organized labor.'' As a result of the picketing, plaintiffs have lost and will continue to lose business. There is no labor dispute between plaintiffs and the wrestlers performing at their arenas. The preliminary injunctions enjoined the picketing.

The sharp conflict in the complaint and affidavits is apparent. The preliminary injunction was issued, however, and I must accept the view most favorable to plaintiffs, as the trial court is the judge of credibility and must resolve the conflicts. (*Northwestern Pac. R. Co.* v. *Lumber & S. W. Union*, 31 Cal.2d 441, 443 [189 P.2d 277].) Plainly, the foregoing matters alleged by plaintiffs are sufficient to establish that professional wrestlers are independent contractors rather than employees. It might seem to show also that the sole purpose of the society and of its picketing activity and demands is not to advance the working conditions of employees or of professional wrestlers as independent contractors. It is to compel them to be members of its organization in order that it may receive a percentage of the compensation which such wrestlers receive for consenting to the broadcast of the matches on television. If this is the only purpose or object of the society, it would appear to be lacking in lawful objective, it being merely a scheme whereby the society will profit from wrestlers without giving them anything in return. I do not know how the members of the society would share in the money so obtained, if at all, but if they share equally, then a portion of the compensation of each wrestler would be shared by all, resulting in wrestlers who commanded higher compensation sharing in part with those receiving less. The only other possibility that presents itself is that the officers of defendant society would consume the profits in salaries paid to themselves, and that their activity in picketing or interfering with plaintiffs' businesses has as its object a ''racket,'' that is, extorting money from the wrestlers, or has no object at all, except that of hurting plaintiffs' businesses.

I do not think that such an interpretation of the complaint is reasonable, nor that the trial court so intended to con-

strue it. It is not alleged that the foregoing purpose was the sole one in the latter part of the quotation from the complaint, and in the first part, it is alleged that the society is not an organization in which *employees* participate, which I construe to mean that wrestlers are independent contractors rather than employees and the members of the society consist of the former. In the same tenor it is also alleged that there is not a labor dispute between plaintiffs and the wrestlers performing in their arenas. But what constitutes a labor dispute is indecisive, that term being vague at the best. As will be seen from the discussion later herein the pertinent factors do not involve such indefinite phrases as "labor dispute," "independent contractors" and "labor organizations." The question is, whether the acts of defendants as such are justified because of the circumstances. I turn, therefore, to the detailed statement in the affidavit of the president of the society showing that it is in part organized to improve the working conditions of professional wrestlers, whether they be called employees or independent contractors, and to deal on behalf of its members with those who use their services, and to adopt rules of fair play among wrestlers, and that the picketing here was done to bring the wrestlers used by plaintiffs into its ranks. Thus there is a situation where independent contractors whose commodity for sale is services —wrestling—join in an association to improve their bargaining position with the buyer of their talents in order that they may obtain more advantageous working conditions and compensation. To that end they picket a prospective user of their services to compel the ones whose services he is using to join the association, and to deal with it in regard to compensation, working conditions and the selection of those who shall be participants in the exhibitions.

Preliminarily, it should be observed, plaintiffs assert that there was no economic relation between it and the wrestlers, because the wrestlers were paid by a "certain" television corporation for the right to televise the matches, hence there was no relationship between them and the wrestlers at all. Plaintiffs allege, however, that they "book" the wrestlers for the performances put on by them. Thus it would appear that they choose who shall perform, and as they are in the promotion business of exhibiting such matches, there is a direct connection between them and the wrestlers. Moreover, they also allege that *they* made a contract with a tele-

vision corporation whereby *they granted* the right of television to the corporation for a compensation "mutually agreed upon." The wrestlers were not a party to the agreement. All that is alleged is that the corporation pays compensation to the wrestlers for television rights. It certainly cannot be said that bringing concerted action at the place where the matches are performed and televised, under these circumstances, is so remote that it is not justified, assuming the concerted activity is otherwise legitimate.

There is no basis for the injunction, inasmuch as the picketing is not for an unlawful object. The object thereof is to persuade the wrestlers engaged by plaintiffs to join the society and be represented by it and to have plaintiffs agree to engage wrestlers through the society. The fact that they are independent contractors or that there is not a labor dispute or the society is not a labor union in the sense that the wrestlers are not employees in the ordinary employer-employee relation, does not alter the case. They are offering their services—their labor—for sale and have a definite economic interest in banding together to more effectively negotiate with prospective purchasers on questions of price, working conditions, etc. In those respects there is no substantial difference between an independent contractor and the one with whom he contracts and the employer-employee relation. In both cases the person is seeking a market for his personal services on the best terms obtainable, and in both the prospective user of those services is, generally speaking, an employer, a user and engager of personal services. The economic interests and positions are fundamentally the same. Indeed, the interference with plaintiffs' businesses may be privileged under a rule that: "One who purposely causes a third person not to enter into or continue a business relation with another in order to influence the other's policy in the conduct of his business is privileged, if (a) the actor has an economic interest in the matter with reference to which he wishes to influence the policy of the other and (b) the desired policy does not illegally restrain competition or otherwise violate a defined public policy and (c) the means employed are not improper." (Rest., Torts, § 771.)

Thus having common factors, cases in the labor relations field are pertinent. Peaceful picketing is lawful "if reasonably relevant to working conditions and collective bargaining" even though there is no dispute between the employer picketed and his employees (*C. S. Smith Met. Market Co.* v. *Lyons*, 16

Cal.2d 389 [106 P.2d 414]) as is picketing to compel independent contractors to join a union, there being an appropriate economic connection. (*Emde* v. *San Joaquin County etc. Council*, 23 Cal.2d 146 [143 P.2d 20, 150 A.L.R. 916]; *Riviello* v. *Journeymen Barbers H. C. Intl. Union*, 88 Cal.App. 2d 499 [199 P.2d 400].) And, in *Bautista* v. *Jones*, 25 Cal. 2d 746 [155 P.2d 343], this court held valid an injunction granted to independent peddlers of milk to enjoin a milk drivers' union from preventing milk brokers from supplying them with milk, because the union would not permit the peddlers to join the union, but said: "It (the right to work in independent business) is equally subject to peaceful, economic pressure by labor organizations seeking legitimate ends, such as conditions of work, collective rather than individual bargaining, seniority privileges and other methods of advancement, and the union or closed shop. (See *McKay* v. *Retail Auto S. L. Union No. 1067*, 16 Cal.2d 311 [106 P.2d 373]; *C. S. Smith Met. Market Co.* v. *Lyons*, 16 Cal.2d 389 [106 P.2d 414]; *Shafer* v. *Registered Pharmacists Union*, 16 Cal.2d 379 [106 P.2d 403]; *American Federation of Labor* v. *Swing*, 312 U.S. 321 [61 S.Ct. 568, 85 L.Ed. 855].)

"The businessman-worker operating in an industry or field in which he competes with organized workmen may likewise be subjected to the same means of persuasion as any other workman to join the union and conform to the conditions regulating union labor."

I am not relying upon any statute and none has been suggested which prohibits the conduct of defendants. Nor am I concerned with the recent decisions of the United States Supreme Court, such as *Building Service Emp. Intl. Union* v. *Gazzam*, 339 U.S. 532 [70 S.Ct. 784, 94 L.Ed. 1045], *International Brotherhood, C.W.H. Union* v. *Hanke*, 339 U.S. 470 [70 S.Ct. 773, 94 L.Ed. 995, 13 A.L.R.2d 631] and *Hughes* v. *Superior Court*, 339 U.S. 460 [70 S.Ct. 718, 94 L.Ed. 985], where the state policy expressed by court decision or statute or the national policy expressed by Congress were found valid, although peaceful picketing was involved. Here there is no state policy, either by statute or court decision, which makes defendants' actions unlawful. On the contrary, in analogous fields, where the strict employer-employee relation exists, the policy is to permit such conduct.

It is urged that the banner "unfair to organized labor" carried by the pickets was false, because there was no labor dispute and the wrestlers are not employees; they are inde-

pendent contractors. I have pointed out, however, that their position is substantially the same as organized labor. Moreover, that phrase "is not a falsification of facts and 'to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies— like "unfair" or "fascist" is not to falsify facts.' (*Cafeteria Employees Union* v. *Angelos, supra*; see *Park & T.I. Corp.* v. *International etc. of Teamsters, supra*.)" (*In re Blaney*, 30 Cal.2d 643, 649 [184 P.2d 892].)

I would, therefore, reverse the orders.

Traynor, J., concurred.

Appellants' petition for a rehearing was denied April 2, 1953. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.