712 P.2d 960

**ARIZONA FARMWORKERS UNION,**
**Plaintiff-Appellant,**

v.

**AGRICULTURAL EMPLOYMENT RE-LATIONS BOARD, an agency of the State of Arizona, Defendant-Appellee.**

**No. 1 CA–CIV 7807.**

Court of Appeals of Arizona,
Division 1, Department A.

Oct. 1, 1985.

Review Denied Jan. 21, 1986.

**48**

Nadine K. Wettstein and Victor Aronow, Phoenix, for plaintiff-appellant.

Loretta Jacobs-Schwartz and Thomas M. Rogers, Gen. Counsel, Agr. Employment Relations Bd., Phoenix, for defendant-appellee.

OPINION

FROEB, Judge.

This appeal challenges the Agricultural Employment Relations Board's definition of the term "agricultural employee, temporary" as that term is used in A.R.S. § 23–1382(1). In addition, the constitutionality of A.R.S. § 23–1382(1) is questioned.

On October 19, 1981, the Arizona Farmworkers Union (Union) filed a petition with the Agricultural Employment Relations Board (Board) seeking an election concerning the Union's representation of the temporary citrus harvesters employed by Daniel Ortega, Sr. The petition alleged that 30% or more of the employees of the proposed voting unit supported union representation for collective bargaining and that the employer, Daniel Ortega, Sr., denied recognition of the bargaining representative. *See* A.R.S. § 23–1389(C)(1).

A hearing on the issue was held by the Board and an election was subsequently held on January 13, 1982. *See* A.R.S. § 23–1389(D). Twenty-nine farmworkers

voted and each vote was challenged by either the Union or the management. Of these challenges, twenty were sustained by the Board because the voters who had cast these votes were found to not fit within the definition of "agricultural employee, temporary" as that term is defined in A.R.S. § 23–1382(1) since they had not worked for Ortega in the preceding calendar year. Of the nine remaining votes, four were cast for the Union and five were cast against the Union. The twenty disqualified ballots remain unopened with the Board pending resolution of this controversy.

The Union objected to the election, in part, because the Board excluded the votes of the twenty farmworkers who had "been employed in the calendar year *preceding the filing of the petition*, within the meaning of A.R.S. Sec. 23–1382(1)...." (Emphasis added) The Board overruled the objections on the ground, in part, that the Union was "redefining" or "misinterpreting" the definition of "agricultural employee, temporary" as used in A.R.S. § 23–1382(1). This dismissal was upheld by the Board on appeal by the Union.

An appeal was filed by the Union in the superior court which resulted in summary judgment for the Board. The case was then appealed to this court.

The first issue relates to the definition of "agricultural employee, temporary." Since only temporary agricultural employees were eligible to vote in the January election, we refer to A.R.S. § 23–1382(1) which states in part:

"Agricultural employee, temporary" means any employee over sixteen years of age who is employed by a particular agricultural employer and who has been so employed during the *preceding calendar year*, engaged in the growing or harvesting of agricultural crops or the packing of agricultural crops where packing is accomplished in the field. (Emphasis added)

The Union argues that "preceding calendar year" in A.R.S. § 23–1382(1) refers to "the 365 day period immediately prior to the filing of the election petition or the date of the election", whereas, the Board contends that calendar year refers to "a period of 365 consecutive days running from January 1 to December 31." We agree with the Board.

In *V.G.I. Harvesting Co. v. Arizona Agricultural Employment Relations Board and United Farm Workers of America, AFL–CIO,* 143 Ariz. 498, 503, 694 P.2d 328, 333 (App.1985), this court found that "preceding calendar year" meant "exactly what it says, that is, January 1st through December 31st of the preceding year...." Therefore, the votes of those farmworkers who had not worked for Ortega between January 1, 1980, and December 31, 1980, were not eligible to vote pursuant to A.R.S. § 23–1382(1). Accordingly, the Board properly excluded those votes from the votes ultimately tallied.

The Union next claims that A.R.S. § 23–1382(1) violates the Equal Protection Clauses of both the United States and Arizona Constitutions. *See* U.S. Const.Amend. XIV, § 1, and Ariz. Const. art. 2, § 13. "The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.' (citation omitted)." *Plyer v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786, 798 (1982). *See also Valley National Bank of Phoenix v. Glover,* 62 Ariz. 538, 554, 159 P.2d 292, 299 (1945) ("The equal protection clauses of the 14th Amendment and the state constitution have for all practical purposes the same effect."). The Union's argument is that there is no substantial difference and thus no basis for distinction between workers included and excluded from voting in the election.

The Board responds, first, that there is no constitutional right to vote in a union election. It then argues that, even assuming a constitutional right exists, there is a rational basis to the statute defining voting rights in this instance and it therefore does not violate equal protection under either the state or federal constitutions.

We assume that the Equal Protection Clause is applicable to the statute involved

in this case. Our first inquiry is the appropriate standard of review.

When a statute is challenged as violating the Equal Protection Clause, we inquire whether a fundamental right or a suspect class is involved.

> The Equal Protection Clause was intended as a restriction on state legislative action inconsistent with elemental constitutional premises. Thus we have treated as *presumptively invidious* those classifications that disadvantage a *"suspect class,"* or that impinge upon the exercise of a *"fundamental right."* With respect to such classifications, it is appropriate to enforce the mandate of equal protection by requiring the State to demonstrate that its classification has been precisely tailored to serve a compelling governmental interest. (Emphasis added)

*Plyer v. Doe*, 457 U.S. at 216–217, 102 S.Ct. at 2394–2395, 72 L.Ed.2d at 799 (1982). *See also Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984) and *Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 637 P.2d 1053 (1981). Neither party has alleged that a suspect class is involved in this dispute.

Thus, the controversy centers on whether a fundamental right is involved requiring us to review the constitutionality of A.R.S. § 23–1382(1) according to a standard of heightened scrutiny. If no fundamental right is involved, we analyze the statute according to a rational basis test, i.e., does the legislation serve some legitimate state interest and do the facts permit the court to conclude that the legislative classification rationally furthers the state's legitimate interest. *See Kenyon v. Hammer*. *See also Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 54, 103 S.Ct. 948, 960, 74 L.Ed.2d 794, 810 (1983) (The state statute "need only rationally further a legitimate state purpose.").

The Arizona Supreme Court recently stated that a fundamental right "has generally been defined as a right 'explicitly or implicitly guaranteed by the constitution' (citation omitted)." *Kenyon v. Hammer*,

142 Ariz. at 83, 688 P.2d at 975. One text discusses the subject as follows:

> The list of rights which the [United States Supreme] Court has found to be fundamental, and, therefore, worthy of strict judicial scrutiny is not a long one.... First, the freedom of association has been found to be a fundamental value which is implied by the first amendment guarantees even though it has no specific textual recognition in that amendment. Second, the right to vote and to participate in the electoral process has been held to be a fundamental constitutional value which is reflected in several amendments and given recognition as a form of "liberty" under the due process clauses. Third, the Court has found a fundamental right to interstate travel which has a long history of recognition as a right to personal mobility under several provisions of the Constitution. Fourth, the Court has implicitly recognized a right to fairness in the criminal process as a fundamental right although its "fundamental" nature has not been the subject of a specific decision. Fifth ... there is a right to fairness in procedures concerning individual claims, against governmental deprivations of life, liberty, or property. Again, this right is not reflected in a specific decision but is, rather, an implied recognition of the fundamental nature of the due process clause in those decisions dealing with "procedural due process" rights. Sixth, there is a fundamental right to privacy which includes various forms of freedom of choice in matters relating to the individual's personal life. This right to privacy has been held to include rights to freedom of choice in marital decisions, child bearing, and child rearing.

J. Nowack, R. Rotunda, and J. Nelson Young, *Constitutional Law* 460–461 (2d ed. 1983).

The Union argues that collective bargaining is an "instrument of government" and therefore the right to vote in a labor election is analogous to the fundamental right to vote in a governmental election. Ac-

cordingly, it argues the right to vote in a labor election is also a fundamental right.

The Union refers us to the following cases in support of this proposition. *NLRB v. Jones & Laughlin Steel Co.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1936); *NLRB v. Lettie Lee*, 140 F.2d 243 (9th Cir.1944); *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738 (1940); *Railway Employees' Department, A.F.L. v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956); and *AFSME v. Woodward*, 406 F.2d 137 (8th Cir.1969).

In *NLRB v. Jones & Laughlin*, the United States Supreme Court stated:

> Thus, in its present application, the statute [National Labor Relations Act] goes no further than to safeguard the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer.

> \* \* \* \* \* \*

> This is a fundamental right.

304 U.S. at 33, 57 S.Ct. at 622, 81 L.Ed. at 909.

We are not persuaded that the language of *NLRB v. Jones & Laughlin* provides much help in analyzing the statute at hand for equal protection purposes because equal protection was not at issue in the case. Nor are we persuaded by the remaining cases cited by the Union. *NLRB v. Jones & Laughlin* antedates the present analytical approach taken by the Supreme Court in resolving questions involving equal protection when a statute such as A.R.S. § 23–1382(1) is involved. *See* J. Nowak, R. Rotunda and J. Nelson Young, pp. 436–461.

In *United States v. Carolene Products Co.*, 304 U.S. 144, 152–153, n. 4, 58 S.Ct. 778, 783–784, n. 4, 82 L.Ed. 1234, 1241–1242, n. 4 (1938), the Supreme Court stated:

> [t]here may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten amendments, which are deemed equally specific when held to be embraced within the Fourteenth.... It is unnecessary to consider now whether legislation which restricts those political processes which can ordinarily be expected to bring about repeal of undesirable legislation, is to be subjected to *more exacting judicial scrutiny* under the general prohibitions of the Fourteenth Amendment than are most other types of legislation. (Emphasis added)

In 1942, in *Skinner v. State of Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), the court found a fundamental right in the area of procreation and applied a test of strict scrutiny to legislation attempting to impinge on this area. Since 1942, a large number of cases involving fundamental rights and the application of a strict scrutiny analysis were decided by the United States Supreme Court.[1]

While there are several cases holding that the right to vote in normal governmental elections,[2] is a fundamental right,[3] we

---

**1.** *See, e.g., "Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (right of a uniquely private nature); *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (right to vote); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right of interstate travel); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (rights guaranteed by the First Amendment)...." *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, n. 3, 96 S.Ct. 2562, 2566, n. 3, 49 L.Ed.2d 520, 524, n. 3 (1976).

**2.** *See Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) (water storage district election was not analyzed under strict scrutiny standard where district did not exercise "normal governmental" authority).

**3.** *See, e.g., Hill v. Stone,* 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975) (striking down statute restricting voting rights in bond elections to those who "rendered" their property for taxation; *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (striking down a statute requiring voters to have fulfilled a one year state and three month county durational residence requirement); *Kramer v. Union Free*

find no case which provides that a union election comes within the concept of a "normal governmental election."

Recently, the United States Supreme Court discussed what constitutes a governmental election. In *Ball v. James*, 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981), the Court applied a rational basis analysis to an election of directors to the Salt River Project Agricultural Improvement and Power District in Arizona. In that case, voting eligibility was restricted to landowners and the voting power was based on the number of acres of owned land. Registered Arizona voters who lived within the geographic boundaries of the District but who did not own land or owned less than an acre of land within the District filed a class action contending that the election procedures violated the Equal Protection Clause of the fourteenth amendment.

The complaint alleged:

that the District enjoys such governmental powers as the power to condemn land, to sell tax-exempt bonds, and to levy taxes on real property. It also alleged that because the District sells electricity to virtually half the population of Arizona, and because, through its water operations, it can exercise significant influence on flood control and environmental management within its boundaries, the District's policies and actions have a substantial effect on all people who live within the District, regardless of property ownership.

451 U.S. at 360, 101 S.Ct. at 1815, 68 L.Ed.2d at 156.

The court discussed whether a strict scrutiny or rational basis standard of review was to be applied in determining whether a violation of the Equal Protection Clause was present in the District's election scheme. The court distinguished

*Reynolds v. Sims* [4] and its progeny of cases, and held that a strict scrutiny standard of review would not be applied to the election procedures because:

the District simply does not exercise the sort of governmental powers that invoke the strict demands of *Reynolds*. The District cannot impose ad valorem property taxes or sales taxes. It cannot exact any laws governing the conduct of citizens, nor does it administer such normal functions of government as the maintenance of streets, the operation of schools, or sanitation, health or welfare services.

451 U.S. at 366, 101 S.Ct. at 1818, 68 L.Ed.2d at 160. The election process was upheld under a rational basis analysis.

■ Turning to the present case, we hold that the election provisions of A.R.S. § 23–1382(1) providing for union representation should also be analyzed under a rational basis standard of review. This case is unlike *Reynolds v. Sims* and those cases evolving from *Reynolds* because a normal governmental election is not at issue. We are persuaded by *Ball v. James* that a union does not exercise "the sort of governmental powers that invoke the strict demands of [*Reynolds v. Sims*]." 451 U.S. at 366, 101 S.Ct. at 1818, 12 L.Ed.2d at 160.

■ The Board next argues that A.R.S. § 23–1382(1) meets a rational basis analysis. It contends that the State has a legitimate interest in establishing "a sufficiently stable relationship between the agricultural employee and the employer to insure a long-term interest in the election outcome and … to provide for an orderly election process." *See also* A.R.S. § 23–1381. The Board points out that negotiation under collective bargaining may take months or years possibly followed by a contract involving two to three more years.

*School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (striking down a statute prohibiting certain federal and state voters from voting in school district elections); *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (striking down poll tax required in state elections); and *Reynolds v. Sims*, 377 U.S. 533, 562, 84 S.Ct.

1362, 1381, 12 L.Ed.2d 506, 527 (1964) (striking down state legislative apportionment plans and holding that "any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized").

4. See note 3, *supra*.

Therefore, it argues, it is important there be a stable relationship between employer and employee so that the potential voting employee has a valid long-term interest in the outcome of the election. The statute requiring a temporary farmworker to have worked for the employer during the preceding calendar year is some assurance that a sufficient relationship between the employer and employee exists. We agree with this argument and hold that there is a rational basis to A.R.S. § 23–1382(1) and that it violates neither the Equal Protection Clause of the United States Constitution nor the Arizona State Constitution. The legislative classification determining which temporary agricultural employees may vote in a union election rationally furthers a legitimate state interest. *Kenyon v. Hammer. See also Perry Educational Association v. Perry Local Educators' Association.*

The judgment upholding the decision of the Agricultural Employment Relations Board is affirmed.

CORCORAN and OGG, JJ., concur.