744 P.2d 437

**ARIZONA FARMWORKERS UNION and agricultural employees of the White-wing Ranch Management, Inc., Plaintiffs-Appellants,**

v.

**WHITEWING RANCH MANAGEMENT, INC., Defendant-Appellee.**

**No. 1 CA–CIV 8700.**

Court of Appeals of Arizona, Division 1, Department B.

April 30, 1987.

Reconsideration Denied June 18, 1987.

Review Denied Oct. 20, 1987.

Nadine K. Wettstein, Phoenix, for plaintiffs-appellants.

Westover, Choules & Shadle, P.C. by A. James Clark, Yuma, for defendant-appellee.

Thomas M. Rogers and Mark O'Connor, Phoenix, for Agricultural Employment Relations Board (amicus curiae).

## OPINION

JACOBSON, Presiding Judge.

Primarily this appeal raises the issue of the constitutionality of a provision of the Agricultural Employment Relations Act, (A.R.S. § 23–1385(B)(13)), which requires that a strike called by a labor organization must be authorized by a majority of the bargaining unit as ascertained by secret ballot. This issue arises out of an appeal of a preliminary injunction against the continuation of a strike called and conducted by appellants, Arizona Farmworkers Union (Farmworkers), on the premises of the Whitewing Ranch near Dateland, Arizona. The Farmworkers urge the following issues for our consideration: (1) whether A.R.S. § 23–1385(B)(13) [1] violates the first and fourteenth amendments of the United States Constitution and article II, §§ 4 and 13 of the Arizona Constitution; (2) whether A.R.S. § 23–1385(B)(13) deprives appellants of property without due process of law in violation of the fourteenth amendment of the United States Constitution; (3) whether A.R.S. § 23–1385(B)(13) is void for vagueness; (4) whether A.R.S. § 23–1385(B)(13) unconstitutionally deprives appellants of liberty without due process; (5) whether A.R.S. § 23–1385(B)(13) permits or requires unlawful interference in the internal affairs of the union; and (6) whether A.R.S. § 23–1385(B)(13) unconstitutionally denies equal protection to a striking minority of employees in a bargaining unit.

The pertinent facts are that Whitewing Ranch is in rural Yuma County. Its outside dimension is approximately fifteen miles. A variety of citrus fruit, including lemons, is grown on about 2,500 acres of the ranch. Valley National Bank, which is not a party to this appeal, owns Whitewing Ranch. Appellee, Whitewing Ranch Management, Inc. operates the ranch.

The citrus harvesting season extends from August through April, beginning with the harvesting of lemons. During the harvest season Whitewing's citrus harvesting

---

1. A.R.S. § 23–1385(B)(13) provides:
    B.  It shall be an unfair labor practice for a labor organization or its agents:
    *    *    *    *    *    *

13.  To call a strike unless a majority of the employees within the bargaining unit has first approved the calling of such a strike by secret ballot.

workers are provided with housing on the ranch at no charge. Workers may elect to eat at the ranch dining hall for $7.90 per day. In September of 1985, 160 to 170 citrus harvest workers were employed on the ranch.

While the Farmworkers Union was not, nor had it sought to become, the certified bargaining agent for the appellee's citrus harvesting employees, organizers from the Farmworkers visited the ranch on September 9, 10 and 11, 1985. In addition, the executive director of the Farmworkers met with representatives of the Valley Bank on September 12, 1985 to discuss problems perceived by the union to exist at the ranch. Among the problems discussed were workers' grievances, management recruitment of people in Mexico to bring them across the desert to the ranch, people dying in the desert, and access for union representatives to the labor camps where the workers lived. During this time, union organizers were circulating union authorization cards to the Whitewing Ranch workers. About 107 cards were signed.

Before dawn on Monday morning, September 16, 1985, a strike declaration was circulated. There is no contention that this declaration was the result of a secret ballot authorizing a strike. No secret ballot authorizing the strike was ever taken. However, the Farmworkers called a strike. The strikers physically occupied an employee housing area of the ranch known as the Boys Camp. In the morning of September 16, 1985 twenty to thirty non-strikers left the camp to go to work. Thirty to fifty people remained in the camp on strike. After leaving for work, non-striking workers remained away from the Boys Camp for fear that they would be harmed. These working crews slept, ate and bathed in the orchards.

On September 16, 1985 the Farmworkers commenced the instant action by filing a petition for special action and application for temporary restraining order. On that same day the trial court issued a temporary restraining order which required the appellees to allow Farmworkers officials to have access to Whitewing's workers.

The following day Whitewing filed a motion to dissolve the temporary restraining order and filed a counterclaim for injunctive relief and damages. The counterclaim named the Farmworkers and numerous John Doe defendants identified as union officials, members and agents of the Farmworkers. Except as to any of Whitewing's employees who were on Whitewing's property for the purpose of actually performing their employment, the counterclaim sought injunctive relief against the following: (1) obstructing or interfering with the use of its premises; (2) obstructing any entrances or exits to its premises; (3) occupying any of Whitewing's facilities; (4) obstructing or interfering with the movement of any vehicle attempting to enter or leave its premises; (5) intimidating, threatening or coercing any of Whitewing's employees to strike against their will or leave their employment in violation of the Arizona Right to Work law; (6) threatening to or causing bodily harm to any persons having business with Whitewing or damaging or threatening to damage any property of any person in or about its premises; (7) congregating, massing, marching, picketing, standing, stationing or maintaining any persons in any of its orchards or on its premises; (8) remaining at and sleeping in the dormitories provided for Whitewing employees; and (9) conducting or threatening to conduct a strike against Whitewing.

The trial court conducted a hearing on September 18, 19 and 20, 1985. At the close of the hearing the trial court stated:

Well, I think an order has to be made, but not on the constitutional issues, which is subject to being resolved subsequently by memos, if counsel desires to do so.

I fear a lot of things about this act certainly could stand improving. The language concerning what is a bargaining unit, how it is picked, the definition of employees falling within it, strikes me as deserving of very serious scrutiny.

I don't know if it is constitutional or how you attack it, but it is very peculiar and I suspect I know exactly why it is in there, but in any event, I do *conclude*

*the strike is unlawful at this time because no secret ballot was taken.*

\*   \*   \*   \*   \*   \*

I think that part of the statute had to be followed and, secondly, no question this strike, in this particular instance, has been called by a labor organization, the labor organization being the Arizona Farmworkers Union.

\*   \*   \*   \*   \*   \*

It is a strike by the plaintiffs, Arizona Farmworkers Union, *and it is an unlawful strike because it was not conducted by secret ballot.* Despite the deficiencies of the statute in that regard, absent regulations, if that be the case, to direct how the vote should be taken, I think at minimum, when the union is faced with the situation it is here, it should at least go the route of having a secret ballot and then determine it is necessary to attack the constitution of the bargaining unit and the validity of the statute that bears precisely on that issue.

\*   \*   \*   \*   ·   \*   \*

On September 21, 1985 the trial court entered a preliminary injunction which declared the strike unlawful, enjoined its continuance and ordered all trespassers on the ranch to be removed within a designated time.

We first consider Whitewing's contention that this court need not consider any constitutional challenges to A.R.S. § 23–1385(B)(13) because the Farmworkers' strike was unlawful on wholly distinct and independent grounds. Whitewing urges the court to sustain the injunction on the ground that the record reveals that the Farmworkers seized and occupied its private property to the exclusion of it and its non-striking employees; that the Farmworkers' strike included threats and intimidation, the blocking of access to private property, false imprisonment, and was conducted entirely on private property; that the primary purpose of the strike was to extort the payment of money from the ranch owner in return for nothing; and that the strikers picketed the domicile of non-striking employees.

While the temporary injunction issued in this matter is susceptible of being interpreted as only prohibiting improper union activity upon the ranch property itself, in our opinion the trial court did not base its injunction on the factual basis that illegal conduct of the strikers was occurring on ranch property. The counterclaim specifically alleged that the strike was illegal because it was not authorized by a majority vote decided by secret ballot. The trial court made no findings of fact concerning the alleged illegal manner in which the strike was being conducted. The characterization of the conduct of the strikers was disputed by Farmworkers. The comments of the trial court itself in stating its reasons for granting the injunction indicate it was doing so, solely on the legal ground that the strike was called in violation of A.R.S. § 23–1385(B)(13). Absent a more specific factual resolution of the conduct of the strikers by the trial court, we decline to resolve this appeal on a basis other than that expressly designated by the trial court.

Whitewing next argues that we should decline to rule on the constitutionality of A.R.S. § 23–1385(B)(13) because the Farmworkers had a statutory remedy available to it at the time of the strike, the pursuit of which would have rendered a constitutional challenge unnecessary. Whitewing notes that under A.R.S. § 23–1389, if the Farmworkers represented thirty percent or more of the citrus harvesting employees, it could have called for an election pursuant to which the Agricultural Employment Relations Board would have determined the composition of the bargaining unit, and which, if the union had prevailed, would have resulted in the union's certification by the Board as the exclusive representative of all the agricultural employees in the bargaining unit for the purpose of collective bargaining on rates of pay, wages, hours and other employment conditions. Whitewing notes that if the union had thus been certified, Whitewing would have been required under A.R.S. § 23–1385(A)(5) to bargain in good faith with the union to resolve any demands. Whitewing states:

Had appellant invoked the remedy of election provided for in A.R.S. § 23–1389, a strike would have been unnecessary and a ruling on the constitutionality of A.R.S. § 23–1385(B)(13) would have been avoided.

This argument misses the point. Either the State of Arizona can constitutionally require a labor organization to hold a secret ballot before it calls a strike or it cannot. Assuming the Farmworkers became certified, there is no evidence that the issues would have been resolved without the necessity of a strike. The issue would still remain as to whether the Farmworkers must comply with A.R.S. § 23–1385(B)(13). Certification or bargaining does not avoid this issue.

We are thus squarely presented with the contention that A.R.S. § 23–1385(B)(13) is in violation of the first and fourteenth amendments to the United States Constitution and the due process and equal protection clauses of the Arizona Constitution. As noted, A.R.S. § 23–1385(B)(13) provides:

> B. It shall be an unfair labor practice for a labor organization or its agents:
>
> \* \* \* \* \* \*
>
> 13. To call a strike unless a majority of the employees within the bargaining unit has first approved the calling of such a strike by secret ballot.

A.R.S. § 23–1382(7) provides:

> "Labor organization" means any organization or any agency defined and described in §§ 23–1301 and 23–1321.

A.R.S. § 23–1301(1) provides:

> "Labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or other conditions of employment.

A.R.S. § 23–1321(1) provides:

> "Labor organization" means an organization of any kind, or an agency or employee representation committee or plan in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or other conditions of employment. For the purpose of this article the word "employee" or "employees" does not include persons having supervisory authority, professional or confidential employees, guards or persons employed in personnel departments.

The Farmworkers's contention that the majority vote requirement of A.R.S. § 23–1385(B)(13) is unconstitutional is premised upon the proposition that the right to strike is a constitutionally protected activity, citing *Stapleton v. Mitchell,* 60 F.Supp. 51 (D.Kan.1945) and *Boca Raton Club v. Hotel Employees' Union,* 36 L.R.R.M. 2493 (Fla.Cir.Ct.1955). It is true these single judge decisions support this proposition. As was stated in *Stapleton:*

> The right to peaceably strike or to participate in one, to work or refuse to work, and to choose the terms and conditions under which one will work, like the right to make a speech, are fundamental human liberties which the state may not condition or abridge in the absence of grave and immediate danger to the community.

*Stapleton,* 60 F.Supp. at 61.

While a distinction can be drawn between the statutes under consideration in *Stapleton* and *Boca Raton Club,* which prohibited *individuals* from striking unless the strike was authorized by a majority vote, and the Arizona statute which prohibits *union* activity without a majority vote, in our opinion, a more fundamental difference exists. As far as we can ascertain, these two cases are the only reported decisions which afford constitutional protection to the right to strike. There is respectable authority to the contrary. As was stated in *Dorchy v. Kansas,* 272 U.S. 306, 311, 47 S.Ct. 86, 87, 71 L.Ed. 248, 269 (1926): "Neither the common law, nor the 14th Amendment, confers the absolute right to strike."

In *United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879, *aff'd mem.* 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971),

a three judge federal court considered the constitutionality of federal legislation prohibiting strikes by federal employees. After noting that no common law right to strike existed and, that in fact such strikes were considered at common law to be a conspiracy, the court held:

Furthermore, it should be pointed out that the fact that public employees may not strike does not interfere with their rights which are fundamental and constitutionally protected. The right to organize collectively and to select representatives for the purposes of engaging in collective bargaining is such a fundamental right [citations omitted]. But, as the Supreme Court noted in *International Union, etc. Local 232 v. Wisconsin Employment Relations Board* [336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651 (1948)], "The right to strike, because of its more serious impact upon the public interest, is more vulnerable to regulation than the right to organize and select representatives for lawful purposes of collective bargaining which this Court has characterized as a 'fundamental right'...."

*Blount*, 325 F.Supp. at 883.

It is cases which recognize these "fundamental rights" in labor relations that Farmworkers relies on in support of its contention that the Arizona statute regulating the prerequisite for calling a strike is unconstitutional: *International Union of Operating Engineers v. Cox*, 148 Tex. 42, 219 S.W.2d 787 (1949) (state cannot prohibit peaceful picketing by defining the members to the controversy); *American Federation of Labor v. Bain*, 165 Or. 183, 106 P.2d 544 (1940) (state cannot prohibit peaceful picketing by defining the members to the controversy); *Baldwin v. Arizona Flame Restaurant*, 82 Ariz. 385, 313 P.2d 759 (1957) (peaceful picketing to accomplish illegal objectives can be enjoined, but state statute which is so broad as to sweep within its ambit constitutionally protected speech and press rights is invalid).

None of these cases touch the issue of whether a state can constitutionally require that before a labor union conducts a strike, such activity must be authorized by a majority vote of those individuals affected.

In our opinion, the better reasoned cases uphold such regulation. In *International Union of United Automobile, Aircraft and Agricultural Implement Workers v. McNally*, 325 Mich. 250, 38 N.W.2d 421 (1949) the Michigan Supreme Court considered the constitutionality of a Michigan statute which prohibited the calling of a strike absent an election at which a majority of the employees in the bargaining unit vote in favor of a strike. The court sustained the statute, stating:

We think it is not an unreasonable exercise of the state's police power to forbid resort to a strike which is not approved by a majority of the employees involved and thereby protecting both the majority of the employees in the bargaining unit and the public. Nor is this the denial of free speech any more than is the limitation of certain other phases of action in labor controversies.

*McNally*, 325 Mich. at 260, 38 N.W.2d at 424–25.[2]

A Wisconsin statute which required a majority vote before a strike could be called was considered in *Hotel & Restaurant Employees' Local No. 122 v. Wisconsin Employment Relations Board*, 236 Wis. 329, 294 N.W. 632, (1940), *aff'd* 315 U.S. 437, 62 S.Ct. 706, 86 L.Ed. 946 (1942). The Wisconsin court held:

"The principle upon which authorized collective bargaining depends is that the rule of the majority within the appropriate collective bargaining unit shall bind the minority. We see no way by which the principles of collective bargaining can be maintained unless this right of a majority of a collective bargaining unit to speak for the unit including the minority is maintained ... If the majority of a

---

**2.** It is true, as appellants note, that in *International Union v. O'Brien*, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978 (1950) the United States Supreme Court reversed *McNally.* As we read *O'Brien*, however, the reversal was based solely on federal preemption grounds, and did not constitute an expression of opinion on the question of the statute's constitutionality on the grounds discussed by the Michigan court.

collective bargaining unit can thus coerce the minority in the manner of bargaining, we see no reason why the legislature may not rest in a majority of the unit power to determine whether such conditions obtain in the employment as to warrant the calling of a strike in an effort to remedy them...."

■ In our opinion, the state may constitutionally require that before a *labor union* may undertake a strike against an employer, that the *union* activity be authorized by a majority of the employees affected by that action.

We next consider the contentions that A.R.S. § 23–1385(B)(13) operates to deprive the individual appellants of liberty and property interests without due process of law. The Farmworkers assert that the individual appellants have protected liberty and property interests in striking, retaining their jobs, maintaining their shelter, and avoiding being stigmatized by being found to have participated in an illegal strike. It is further argued that the Farmworkers had protected property and liberty interests in being able to direct strikes and other concerted activities, to earn its livelihood, and to maintain its good name, reputation, honor and integrity. These interests, it is asserted "are sufficient to trigger procedural due process requirements" and argue that the Agricultural Employment Relations Act affords no procedural due process. They reason that this is so because the Act provides no guidelines concerning how the required "secret" ballot is to be conducted, and provides no procedure by which the composition of the "bargaining unit," of which a majority must vote to approve any strike, is to be determined.

■ If this argument is considered to be couched in traditional concepts of due process, elementary constitutional law holds that procedural due process is satisfied where, before a party is deprived of a protected liberty or property interest, the party is afforded adequate notice of the grounds on which the proposed deprivation is sought, a fair opportunity to be heard, and an impartial tribunal which considers the evidence before making its determination. *See generally U.S. v. Superior Court*, 144 Ariz. 265, 697 P.2d 658 (1985); *Sparks v. Republic National Life Insurance Co.*, 132 Ariz. 529, 647 P.2d 1127, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). In this case there can be no serious contention that the Farmworkers were not accorded procedural due process by the judicial process they instituted.

■ However, we perceive this argument to be more rationally related to the separate contention that A.R.S. § 23–1385(B)(13) is void for vagueness. We reject that contention as well. Although the concept of a "bargaining unit" is not specifically defined for purposes of A.R.S. § 23–1385(B)(13), A.R.S. § 23–1389(B) makes it clear that a bargaining unit is to "consist of either all temporary agricultural or all permanent agricultural employees of an agricultural employer working at the farm where such employer grows or produces agricultural products or both." In this case it is apparent that the issues out of which the strike arose suggested no distinction whatever between temporary and permanent agricultural employees, and thus the bargaining unit could reasonably have included both. Under A.R.S. § 23–1382(1), as interpreted by our decision in *VGI Harvesting v. Arizona Agricultural Employment Relations Board*, 143 Ariz. 498, 694 P.2d 328 (App.1985), this bargaining unit would accordingly have consisted of all Whitewing's current agricultural workers who had been employed for any period of time during the calendar year preceding the strike vote.

We are not impressed by Farmworkers's complaint that it could not determine the membership of the bargaining unit for purposes of conducting the vote without having access to the employer's payroll records. It had no problem circulating and obtaining 107 signatures on union authorization cards. Nor did any problems occur in circulating a "strike declaration."

More importantly, there is no evidence that the Farmworkers even attempted to comply with the statute. Even the attempt to collect "strike declarations" is not urged

as constituting a secret ballot, or that its results constituted a majority vote. Under these circumstances, the argument that the statute is incapable of being complied with falls on less than receptive ears.

■ We also reject the argument that A.R.S. § 23–1385(B)(13) violates the "long established principle of non-interference in the internal affairs of labor unions." As we have outlined above, the appropriate procedure for conducting a strike vote under A.R.S. § 23–1385(B)(13) need not include any threatened or actual interference by the employer or the Agricultural Employment Relations Board.

■ We lastly consider the argument that A.R.S. § 23–1385(B)(13) violates equal protection. It is argued that the statute forbids a strike by a minority of the bargaining unit and thereby discriminates between workers based on their desire to exercise first amendment rights. It is argued that:

> If those who want to strike are in the minority of the bargaining unit—not necessarily of the work force—none of them can participate legally in a concerted work stoppage. This kind of classification—between equally situated people, some of whom desire to exercise First Amendment rights and some of whom do not—is so completely without merit as to warrant the strictest standard or [sic] review.

This contention is entirely vacuous. We have held there is no first amendment right to strike. Further, the reach of A.R.S. § 23–1385(B)(13) is expressly limited to labor organizations and their agents. Contrary to appellants' argument, not every group of employees who determine to strike will constitute a "labor organization" subject to the strictures of A.R.S. § 23–1385(B)(13). As defined in A.R.S. §§ 23–1301(1) and 23–1321(1), a labor organization is one which has an independent existence apart from the employees who participate in it, and which exists at least in part for the purpose of dealing with employers on employees' behalf. Accordingly, A.R.S. § 23–1385(B)(13) would not prohibit all labor related action by employee groups consisting of a minority of the work force.

Affirmed.

GREER and HAIRE, JJ., concur.